# CHARLESTON.

STEWART *v*. DOAK BROTHERS.

Submitted September 7, 1905.    Decided October 31, 1905.

1. REAL ESTATE—*Boundary Lines—Evidence—Appeal.*

When in a controversy over the title to land, dependent upon the location of a disputed boundary line, there are no monuments at the points in dispute, and these points cannot be located by measurements from known and undisputed corners of the tracts between which the line is, so that, to render a verdict for either party, the descriptions of the deeds must be departed from in respect to length of lines, a verdict supported by testimony of a witness who swears he saw the monuments called for at the points fixed by the verdict as corners, and evidence of acts of recognition by owners on both sides of the line and other circumstances, cannot be disturbed by the appellate court as being contrary to the law and the evidence, in the absence of an admitted or clearly established controling fact. (p. 178).

2. Instructions.

It is not error to refuse a misleading instruction. (p. 179).

3. Real Estate—*Title—Evidence.*

Declarations of a living predecessor in title in disparagement thereof, made before he parted with it, is admissible evidence against the party claiming under him. (p. 180).

4. Real Estate—*Title—Evidence—New Trial.*

When such admissions on the part of a deceased former owner have been proved, newly discovered evidence of like or similar admissions by another predecessor who is living, is cumulative and affords no ground for a new trial, nor can the court say, as matter of law, that such new evidence ought to produce a verdict different from the one rendered. (p. 181).

5. New Trial—*Affidavit.*

An affidavit, filed on a motion for a new trial on the ground of newly discovered evidence, must show such facts relating to its discovery as will enable the court to see that it probably could not have been discovered before the trial by the exercise of due diligence. (p. 181).

Error to Circuit Court, Ritchie County.

Action of Ejectment by Peter Stewart against Isaiah Doak and others. Verdict for defendants and plaintiff brings error.

*Affirmed.*

Freer & Robinson, for plaintiff in error.

Duty & Fidler, for defendants in error.

Poffenbarger, Judge :

An action of ejectment, tried in the circuit court of Ritchie county, between Peter Stewart, plaintiff, and Isaiah and John R. Doak, defendants, in which the title to about six acres of land, dependent upon the location of a boundary line, was involved, having resulted in a verdict and judgment for the defendants, the plaintiff complains here, assigning as errors, the failure of the court to set aside the verdict and permit a new trial on the ground that the verdict is contrary to law and the evidence; the refusal of the court to grant a new trial on the ground of newly discovered evidence; the refusal of the court to give, at the instance of the plaintiff, a certain instruction; and the giving, at the instance of the defendants, certain other instructions. An intelligent disposition of these

several assignments necessitates a particular statement of the controversy and a review of the evidence.

On the 11th day of September, 1872, there was conveyed to the plaintiff, by James Taylor and wife, a tract of land, described as containing two hundred and nine acres, out of a seven hundred and eighty acre tract patented by Jacob B. Blair in 1851, which was described in the patent as bordering upon three lines of a one hundred acre tract, patented by John Lewman in 1822. The part of the Blair tract obtained by the plaintiff bordered upon two lines of the Lewman tract, described as follows: From a beech and cucumber N. 69 W. 170 poles to a white oak and thence N. 42 E. 100 poles to a white oak. This last line is the one whose location is in controversy, the plaintiff claiming it to be at a point 170 poles from the beech and cucumber and the defendants at a point 187½ poles, as ascertained by the survey made in this case. This difference of location makes controversy as to a parallelogram, containing about twelve acres, at the northwestern end of the Lewman tract. The northeastern end of this parallelogram is claimed and occupied by Henry Markle. Next to him lies a small triangle, purchased by Stewart, the plaintiff, from J. H. Marshall, a former owner of the Lewman tract. This action was brought against the defendants who are now the owners, by conveyance, of the Lewman tract, less the portions sold out of it to the plaintiff and Markle and J. N. Collins.

The Stewart two hundred and nine acre tract is irregular in form and calls for seven lines of the original Blair tract, two of which are lines of the Lewman tract. These seven lines are described as follows: Beginning at pointers on the top of the ridge, thence S. 44 W. 14 poles to a gum and hickory; thence S. 28 E. 112 poles to a maple, corner to lands claimed by Manuel Lacey; thence N. 55 E. 112 poles with a line of lands claimed by Rolly Haddox to a gum; thence with another of said Haddox's lines S. 7 E. 164 poles to a white oak; thence with a line known as the Beason's Survey, N. 42 E. 216 poles to a beech and cucumber and corner of said Collins 180 acre tract, (the Lewman tract); thence with a line of same N. 69 W. 170 poles to a white oak; thence N. 42 E. 100 poles to a white oak. Plaintiff's deed supposedly makes the point at which the last above mentioned

white oak stood the beginning corner of the tract thereby
conveyed, and describes the lines running thence N. 60 W. 35
poles to pointers, and corner of the tract of land owned by
Neal Hammond; thence with one of his lines N. 60 W. 136
poles, crossing a run to a maple, also a corner of said Ham-
mond; thence S. 78 W. 44 poles to a stake; thence S. 10 W.
157 poles to pointers said to be a corner of lands owned, or
formerly owned, by William Boreman, the pointers corner
called for in the Blair patent; and then follows substantially
the calls of the patent as above given; the departures from
the patent being as follows:  The line S. 28 E. is made 114 poles
and 15 links instead of 112 poles; the line N. 55 E. is made
117 poles instead of 112; the line S. 7 E. is made 184 poles
instead of 164; the line N. 42 E. 216 poles is made 220 poles;
and the line N. 69 W. 170 poles is made 64° 20′ W. 174 poles
to a white oak described as being down, one of the corners in
controversy; and the other line N. 42 E. 100 poles to the be-
ginning is made to run to a stone corner to lot of H. B.
Collins, instead of to the white oak mentioned in the Lewman
patent, as well as in the Blair patent by reference to the Lew-
man tract.  Collins, at the date of the plaintiff's deed, was
the owner of the Lewman tract and is described in the Blair
patent as the occupant of said tract.  Said Collins had also
acquired the Blair seven hundred and eighty acre tract in
1856, which had been sold under a decree of the circuit court
of Ritchie county, about the year 1858, to James Taylor, who
was the grantor of the plaintiff, Stewart.

The Lewman tract is a perfect parallelogram, the sides of
which were originally described as being 170 poles and the
ends 100 poles, the lines N. 69 W. 170 poles on the south-
western side thereof and N. 42 E. 100 poles on the north-
western end thereof were common to the Lewman tract and
the Blair tract.  As to the line N. 69 W. 170 poles, the de-
scription in the deed to the defendants follows that in the
Lewman patent as does also that given in the deed to Mar-
shall, grantor of the defendants, and the deed to Henry B.
Collins, from whom the land passed to Marshall and in the
deed to Henry Haddox from the patentee, John Lewman.

By the surveys made in this case, the lines of the Stewart
tract were found to vary from the descriptions given in the
Blair patent as follows:  Line S. 44 W. 14 poles is S. 46½

W. 14⅜ poles; the line S. 28 E. 112 poles is S. 25½ E. 114; the line N. 55 E. 112 poles is N. 60½ E. 110; the line S. 7 E. 164 poles is S. 4½ E. 184 poles; the line N. 42 E. 216 poles is N. 46 E. 214½ poles; and the line N. 69 W. 170 poles is N. 65 W. 170 poles to the point claimed by the plaintiff as the corner and 187½ poles to the point claimed by the defendants as the corner. By actual measurement, the long lines of the Lewman tract are 170 poles, as described in the patent, to the points claimed as corners by the plaintiff, and 187½ poles to the points claimed as corners by the defendants. This makes a difference as stated of 17½ poles. In what may be called the plaintiff's new lines of the Stewart tract, there is a discrepancy in length of about 13 poles in the first line. By commencing at the point claimed by the plaintiff and running to the maple corner, the distance is found to be 184 poles instead of 171 poles as called for in the deed. The others correspond in length with the calls of the deed except that one line is 142⅓ poles long instead of 157 as described in the deed.

Coupled with the fact that the surveys are based, in some instances, upon known and undisputed corners called for in the deeds, the plaintiff relies upon the close approximation of the measurements made to those described in the deed in support of his attack upon the verdict as being contrary to the evidence. He supplements this by the following recital in the defendants' deed which is subsequent in date to that of the plaintiff. Leaving the beech and cucumber, the defendants' line is described as running N. 69 W. 170 poles to a white oak; "thence N. 42 E. about 43½ poles to a stone, and corner to a lot owned by Peter Stewart." As has been stated, Stewart, the plaintiff, owns a small triangular piece of land, by purchase from Marshall, as part of the Lewman tract, and lying within the twelve acre parallelogram, bounded by the two locations of the northwestern Lewman tract line, and adjoining the six acres in controversy, which is also a part of said parallelogram. The Stewart corner referred to in the deed of the defendants is a corner of this triangle and clearly not a corner of the Stewart two hundred and nine acre tract, purchased out of the Blair tract. Starting at the extreme western corner of the Lewman tract as claimed by

the plaintiff and running, on a course, N. 42 E., the line would strike the southeastern corner of this triangle. Commencing at the corner of the Lewman tract as claimed by the defendants, and running on the same course, the line would strike the northwestern corner of the Stewart triangle. About the only difference would be in the length of the lines from the two different points. The former would exceed the length called for in the deed by twenty-three and one-half poles and the latter by thirteen and one-half poles. Hence, considering the difference in length of the lines only, this recital of the deed seems to favor the contention of the defendants, rather than that of the plaintiff, and not to strengthen the other circumstances relied upon by the plaintiff. A further circumstance to which weight is attached is the former existence of marked trees on the line as contended for by the plaintiff which had been cut down and removed by the defendants in clearing up the land in controversy. One of the defendants admitted having seen some marked trees as claimed by the plaintiff and another witness testified to having seen them, but neither could give any definite and accurate information as to the exact location of the trees or the age or character of the marks.

The defendants rely upon the testimony of a witness who claims to have seen the white oak trees called for in the Lewman patent as the northwestern termini of its two long lines. M. D. Barnett testified to having seen both trees standing in the year 1857 at the points claimed as corners by the defendants, and said they were pointed out to him as corners by Henry B. Collins. Other witnesses testify that Collins, in his lifetime, pointed out to them as corners, the points claimed by the defendants, but both trees had then disappeared. At the end of the line on the northeastern side of the Lewman tract, as claimed by the defendants, there is now a large stone which Collins said was within two to four feet of the point at which the oak tree stood. J. E. Taylor, J. H. Marshall, William Ridgeway, and perhaps others, testify to the express recognition of this corner by the plaintiff, Stewart. A circumstance showing conclusively Stewart's belief, some eight or ten years before the trial of this case, in the location of the line as claimed by the defendants, is his purchase from Marshall, the then owner of the Lewman tract, of the small

triangular piece of land hereinbefore described. He says he made this purchase under a misapprehension as to the location of the line, but the purchase is a fact in the nature of an admission which was proper for the consideration of the jury in connection with the other evidence.

In arriving at the verdict for the defendants, the jury found it necessary to extend the lines of the Lewman tract seventeen and one-half poles. To have reached a verdict for the plaintiff, it would have been necessary to have extended his line from the beginning corner to the maple about thirteen poles. Hence, in either view, it was impossible to make the lines correspond in length with the calls of the deeds, and, as the corners were undisputed, as well as fairly established by the evidence, it became a question with the jury as to whose line should be lengthened. They made the solution of this question depend upon the evidence as to the location of the corners in question, because the locations of the disputed corners could not be ascertained by measurement or marks. This evidence consisted of the approximation of measurements, declarations of the deceased former owner, acts of recognition and acquiescence, the direct and positive testimony of a witness who said he had seen oak trees standing at the points contended for by the defendants, and the testimony of witnesses who said they had seen marked trees standing along the line as claimed by the plaintiff. No other mode of determining the question was open to them, and no ground is perceived upon which a verdict standing upon such evidence can be set aside by the court. Enough has been said about the call in the defendants' deed for the plaintiff's corner to show that it could not control the force of the other evidence just referred to. That call is a corner of the triangle, purchased by the plaintiff, as a part of the Lewman tract, and not of his purchase out of the Blair tract, which has no corner corresponding to the description, and the northwestern corner of the triangle on the line claimed by defendants fits the description better than the southeastern corner on the line claimed by the plaintiff. It has no controlling force. Moreover, plaintiff's deed calls for a stone as the beginning corner and there is, and has been for a long time, a marked stone at the point contended for by the defendants, and none at the place contended for by the plaintiff, and that stone is

described in the deed as the corner of the Henry B. Collins (Lewman) tract. This, no doubt, had great weight with the jury, as justly it might have had. The instructions given for defendants harmonize with these views and were proper.

The instruction which, it is said, the court erroneously refused to give the jury at the instance of the plaintiff is as follows: "The court instructs the jury that the defendants' title paper, to-wit: the deed from Marshall to Isaiah and John R. Doak, calls for Peter Stewart's corner, and if the jury believe from the evidence that the said corner so called for is at point 10 on said plat on the line N. 46 E. 106 poles at the figure 10 the jury will find for the plaintiff." It has already been observed and distinctly pointed out that the corner mentioned in the defendants' deed is not and cannot be a corner of the two hundred and nine acre tract, the line of which is in controversy. There is no controversy as to the lines of the small triangle, the corner of which is plainly referred to by this deed. If the deed called for the southeastern corner of the triangle, the recital would be favorable to the plaintiff, but not a word in the deed indicates which corner of the triangle is indicated, the northwestern corner, according fully with the contention of the defendants, meets this description just as well as the southeastern corner of the triangle, if not better. In view of these facts, the action of the court in refusing this instruction, which could have had no effect other than to mislead the jury in the interest of the plaintiff and to the detriment of the defendants, was clearly proper and right.

The newly discovered evidence upon which an application for a new trial was based is set forth in the affidavit of Samuel R. Owens as follows: "worked for J. N. Collins two years about the years 1885 and 1886 and more or less before these dates and after, and during the time I worked for said J. N. Collins he owned and controlled the old 100 acre tract of land known as the old H. B. Collins tract, and during the time I worked for him he wanted me to do a job of grubbing for him on the west side of the old 100 acre tract next to Peter Stewarts land, and showed me where his corner was next to Stewart in a low place at the foot of a steep bank just above the first bench of the hill and now represented on the plat at figure "9" he also showed me his line

leading out from 9 to 1 there was three old line trees leading out from 9 to 1 was a hickory center line and the other two was side lines the marks on these lines was very old, J. N. Collins showed them to me and said there was his line and not to grub over that. I would further state that H. B. Collins told J. N. Collins in my presence not to cut the red oak tree that was Peter Stewarts and he would get into trouble.'' The figures ''9'' and ''1,'' referred to in the affidavit, represent the corners as contended for by the plaintiff. The red oak tree mentioned in it stood near the line as claimed by the defendants and there was some evidence tending to show that it was regarded by H. B. Collins and those who claimed under him as a line tree. It had been cut down at some time before the trial.

An effort is made to sustain the action of the court on the ground that the testimony of Owens to an admission on the part of J. N. Collins who is living and might have been called, is inadmissible. This position is untenable. No decision of this Court seems to come quite up to the question. In *Harriman* v. *Brown*, 8 Leigh 697, Milburn, whose declaration was held admissible, was still interested in the land. *High's Heirs* v. *Pancake*, 42 W. Va. 602, deals with the admissibility of declarations and acts of deceased former owners and living parties, and does not seem to discuss admissibility of declarations of living predecessors in title in disparagement thereof. But Wigmore on Evidence, exhaustive, analytical, historical and philosophical, perhaps beyond precedent, at section 1080, says the admissibility of such declarations is now firmly settled, although the recognition of it was slow and the decisions were hesitant and vacillating until a comparatively recent date. This position he sustains by an array of authority, both English and American. The pith of his reasoning is as follows: ''Having precisely the same motive to make correct statements, and being identical with the party (either contemporaneously or antecedently) in respect to his ownership of the right in issue, his admissions may, both in fairness and on principle, be proffered in impeachment of the present claim.'' In further elucidation of the theory, he quotes the following from Cowen and Hill's Notes to Phil. on Ev., No. 481, p. 644: ''(The owner's) estate or interest in the same property, afterwards coming to another, by descent,

devise, right of representation, sale or assignment, in a word, by any kind of transfer, whether it be the act of the law or the act of the parties, whether the subject of the transfer be real or personal estate, corporeal or incorporeal, choses in possession or choses in action, the successor is said to claim under the former owner; and whatever he may have said affecting his own rights, before parting with his interest, is evidence equally admissible against his successor claiming from him, either immediately or remotely. And in this instance, it makes no difference whether the declarant be alive or dead; for though he be a competent witness, and present in court, his admissions are receivable. This doctrine proceeds upon the idea that the present claimant stands in the place of the person from whom his title is derived; has taken it *cum onere;* and as the predecessor might have taken a qualified right, or sold, charged, restricted, or modified an absolute right, and as he might furnish all the necessary evidence to show its state in his own hands, the law will not allow third persons to be deprived of that evidence by any act of transferring the right to another." But the declaration must have been made before the declarant parted with the land. See Wigm. Ev. section 1082, where a long list of authorities is given in the note, sustaining and illustrating the rule and its exception.

Though admissible, if it had been offered on the trial, this newly discovered testimony of Owens did not call for a new trial because it is palpably cumulative. By two witnesses, the plaintiff had proved the same kind of admissions by H. B. Collins, a deceased former owner, and father of said J. N. Collins. It is testimony of the same character and to the same point. Upon newly discovered cumulative evidence, a new trial cannot be allowed. *State* v. *Betsall*, 11 W. Va. 703; *Swisher* v. *Malone*, 31 W. Va. 442; *Halstead* v. *Horton*, 38 W. Va. 728; *Grogan* v. *Railroad Co.*, 39 W. Va. 415; *Sisler* v. *Shaffer*, 43 W. Va. 769. Nor is it clear that this evidence ought, on a new trial, to produce a different result. This must appear to the court before the verdict can be set aside. Another essential requisite is that the affidavit of the party, desiring a new trial, show on its face such facts as will enable the court to see that he could not have discovered the evidence before the trial. The affidavit of Stewart only says he could

not have discovered it by due diligence and did not know of it. Under *Swisher* v. *Malone*, it may be doubted whether this is enough. See 31 W. Va. p. 448. Is it sufficient to state mere conclusions? Ought not some facts appear? Who determines the question of due diligence, the party or the court? The court must be able to see it in the facts stated, not in the mere opinion of the witness, based upon facts known to him and not given to the court.

There is no error in the judgment and it will be affirmed.

*Affirmed.*