# CHARLESTON.

EMMA J. CHAMBERS *et al.* v. SPRUCE LIGHTING COMPANY.

Submitted February 12, 1918.    Decided February 26, 1918.

1. PLEADING—*Demurrer—Misjoinder of Counts—Decision.*

   In determining on demurrer whether there is a misjoinder of counts in a declaration in trespass on the case, one of which contains averments usual in an action of assumpsit for breach of contract, the court will look to the form of the action and reconcile the count with the form adopted if it can do so without violating some well recognized rule of pleading.   (p: 716).

2. ACTION—*Declaration—Misjoinder of Counts.*

   Where a declaration and one of two counts thereof conform with the action—trespass on the case—to recover for an injury inflicted by a public service corporation, in this instance a company furnishing lights to domestic consumers, the other count will be construed also to conform with both, when to do so is not forbidden by some well recognized and inflexible rule of pleading and the count discloses an intention to rely for recovery on the breach of a public duty, though it does use the words "agreed", "promised" and "consideration", terms usual in declarations in assumpsit.   (p. 716).

3. DAMAGES—*Cutting off Service.*

   The true standard or test for determining the loss resulting from the impairment of a business conducted in a building, by a cause readily remediable, as by the restoration of an electric current wrongfully discontinued during eight months or less, primarily is not depreciation in rental value of the building, the occupancy thereof not otherwise being disturbed, but rather loss of profits of the business therein conducted occasioned during the interim by the interruption of the current.   (p. 717).

4. ELECTRICITY—*Contract—Rules and Regulations.*

   A corporation assuming the performance of a public duty to domestic consumers, as the furnishing of electricity for lights, may make and enforce reasonable rules and regulations for the conduct of its business; but it cannot compel its patrons to enter into contracts releasing it from its obligations when and as it may arbitrarily elect, but must to the extent of their needs and within the limits of its facilities serve alike those accessible thereto who apply therefor and submit to such rules and regulation.   (p. 717).

5. EVIDENCE—*Presumption—Failure to Produce Document.*

   Where upon a party to an action rests the burden of proving a

material fact in issue, his failure, without sufficient excuse, to produce when demanded a document in his possession which would establish the fact, if true, raises the presumption that if introduced it would not support his pretension.  (p. 720).

6.  SAME—*New Trial—Certainty of Proof—Grounds.*

Although actual certainty of proof cannot lawfully be exacted, a verdict based on uncertainty and inconclusiveness cannot serve as the basis of a judgment; and where plaintiffs, to show loss of custom or profits in conducting a hotel occasioned by the wrongful discontinuance of an electric current for lights, testified over objection as to what the hotel register would show if produced but which was not produced when demanded and its absence not satisfactorily accounted for, a new trial should be awarded on motion therefor when timely made.  (p. 720).

7.  TRIAL—*Instructions—Refusal.*

Instructions considered and approved as correct and applicable, or disapproved as incorrect and inapplicable to the facts proved. (p. 722).

Error to Circuit Court, Boone County.

Action by Emma J. Chambers and others against the Spruce Lighting Company. Judgment for plaintiffs, and defendant brings error.

*Reversed and remanded for new trial.*

*Leftwich, Byrnside & Shaffer,* and *Price, Smith, Spilman & Clay,* for plaintiffs in error.

*J. B. Hager* and *Chas. L. Estep,* for defendant in error.

LYNCH, JUDGE:

The Spruce Lighting Company, successor of the Spruce Fork Company, corporations chartered and organized under the law of this state, and the Boone County Coal Corporation, an affiliated company, on May 11, 1914 jointly owned a large boundary of coal lands located in Boone County and operated it through lessees to whom defendant furnished light and power from its electric light plant completed in June 1912 about three miles above Clothier where plaintiffs were engaged in conducting a hotel on property owned by them. Having more current than was necessary to supply its lessees, defendant furnished part of the excess to plaintiffs and others convenient to its lines; but desiring to avoid the duties and

liabilities likely· to devolve upon it in ·consequence of the decision in *Wingrove* v. *Public Service Commission,* 74 W. Va. 190, defendant communicated with a member of that Commission and, acting upon the unofficial advice given, prepared and undertook to induce plaintiffs and others not its lessees to sign contracts which purported to release it from the obligations chargeable to corporations engaged in serving the public. Plaintiffs, relying upon a pre-existing oral agreement, refused to sign another, and defendant on May 11, 1914 disconnected their property from its lines and discontinued the service thereby compelling plaintiffs to resort to other modes of lighting their property. This they did by the use of oil lamps and other means for about six weeks when they procured connection with the power plant and wires of the Boone Timber Company, the quality and adequacy of whose service proved to be less satisfactory than that of defendant, in consequence whereof plaintiffs claim they suffered injury through loss of the customary hotel patronage, wherefore this action. The period covered by the interruption did not exceed eight months, at the expiration of which defendant restored the service under the command of the Public Service Commission upon plaintiff's petition.

The first error assigned for reversal of the judgment entered upon the verdict for $1000.00 is the action of the court upon the demurrer to the declaration and to each of its two counts, the second of which clearly conforms with the action, trespass on the case. The first count, it is argued, is for breach of contract; and a cursory examination seems to reveal an intention to rely on such breach. The count does aver a reciprocal contract to the effect that, for the service defendant engaged to render, plaintiffs were to pay eight dollars monthly and permit defendant to have the beneficial use of their water supply line. However, a more careful survey and analysis of the count, although it uses the words "agreed", "undertook", "promised" and "consideration", the usual characteristics of an assumpsit, seem to disclose an intention on the part of the pleader to declare in tort. For, after setting out in detail an oral agreement for the service, performance of the reciprocal undertakings mutually as-

sumed, the payment of money, the furnishing of water facilities and the supply of electricity, the count charges failure to perform obligations legally chargeable to a corporation bound upon proper application, subject to reasonable rules and regulations, to serve the public; and it is of the non-performance of this duty, not the breach of the contract, that the count complains. Not infrequently the averments of a declaration or of some of its counts will support assumpsit or tort, because the circumstance averred may show a tortious neglect or a wrongful breach of contract to perform a public duty. In such case, courts will look to the form of action in determining the character of the pleading and harmonize the two except where to do so would violate some well recognized rule. *Ferrill* v. *Brewis' Adm'r,* 25 Gratt. 765.

It is contended further that the court below erred in permitting the plaintiffs to read in evidence their complaint to the Public Service Commission and other portions of the proceedings had in connection with this complaint, to sustain the proposition that defendant was a public service corporation. It is unnecessary to decide this point since the testimony discloses that electric service had been rendered for compensation to six or eight private domestic consumers, thus bringing defendant within the rule laid down in *Wingrove* v. *Public Service Commission, supra.* Whenever a corporation or natural person undertakes to render to others services which by legislative enactment or judicial decision have been declared to be of the nature of public service, such corporation or natural person thereby submits to be governed by those rules and principles which are applicable to public service companies. Though the power of eminent domain is a frequent characteristic of a public service corporation, it is not a necessary one. *Wingrove* v. *Public Service Commission, supra.* So long, therefore, as defendant continues to serve some private domestic consumers, it must submit to be governed by rules applicable to such corporations.

It is well settled that a public service corporation may make reasonable rules and regulations governing its relations with patrons, but this privilege is subject to the limitation that the regulations must not release it from any of the

obligations required of such utility, unless done by special contract voluntarily entered into by the patron. There is a still further restriction that the contract must be of such nature as not to be against public policy. Wyman, Public Service Corporations, section 338.

The contract proposed by defendant was in part as follows: "It is expressly understood by the consumer that such power furnished for lighting of said hotel is simply supplied as an accommodation to the consumer and does not bind the producer in any way to furnish additional lights to the consumer or any other person; it being understood that the business of the producer is that of furnishing electric power for the lessees' mining operations."

It is the duty of a utility to serve all who are reasonably accessible and apply for service to the extent of their needs and within the limits of its facilities. This duty, imposed by law, the proposed contract attempts to curtail. Defendant could not compel plaintiffs to sign it under threat of cutting off their service as its pleasure might prompt. *Dittmar* v. *City of New Braunfels,* 20 Tex. Civ. App. 293. It is unnecessary to consider whether such restriction of duty would be against public policy, for that question could not arise unless plaintiff had voluntarily signed the contract. So long as defendant continues to serve the public plaintiffs can require it to furnish as much current as they desire and are able to pay for, within the limits of its facilities, though they did refuse to sign the contract.

Having failed in that duty, what is the measure of damages that should be applied? The court below admitted testimony as to the loss in rental value and of prospective profits. But the injury here complained of was temporary in its nature, not permanent. In the case of *McHenry* v. *City of Parkersburg,* 66 W. Va. 533, the court in drawing the distinction between permanent and temporary injuries, said: "Injury to real estate differs in nature and degree. Under some circumstances, recovery may be had from time to time as damages accrue. Under others, but one recovery can be had and that includes all the injury the property has sustained in the past, and will sustain in the future. Damages,

recovered in the latter class of cases, are called permanent damages, and damages recovered in the former, temporary damages. Permanent damages are given on the theory that the cause of injury is fixed and indeterminable and the property must always remain subject to it. The injured party is limited to the recovery of temporary damages, when the injury is intermittent and occasional, or the cause thereof remediable, removable or abateable. It assumes that the plaintiff himself may be able to remedy the cause of injury or relieve his property from its ill effects, or that the defendant will be induced or compelled, by the infliction of repeated judgments for damages, to remove it.'' When the injury is permanent, the measure of damages is the difference in market value between the property in its former condition and the property immediately after the injury. *Keene* v. *Huntington,* 79 W. Va. 713. But that measure is not the standard where the injury is only temporary. Property derives its commercial, as distinguished from its sentimental, value from the uses to which it may be put. When the injury is permanent the owner is deprived of the use of the injured portion of his property and that deprivation is expressed roughly by the difference between the value immediately before and the value immediately after the injury. Where the injury is temporary, the owner has been deprived of the use of his property only temporarily; and to compensate him for the loss suffered it is only necessary to reimburse him for the expense necessary to remove or guard against the injury and for the value of the use of which he has been deprived. When the cause of the injury is removed or rendered harmless and the property restored to its former condition, the impairment of its use and enjoyment also ceases. Hence to ascertain what will compensate for a temporary impairment of the use of property, it is necessary to discover the nature and character of the use and the extent of the profits derived or derivable from such use, as from an established business or from rentals. If the rental value is decreased, the measure of damages properly is the decrease in rental value; if profit from an established business is lost, the measure is the loss of such profits. Thus the proper measure may be rental value in one

case, loss of profits in another, depending upon the use to which it was being placed. Where the injury is permanent, he may be entitled not only to the difference in market value, which is capitalized rental value, but also to the loss of prospective profits. Where it is temporary, however, the owner usually loses only profits or rentals, rarely both, and damages for the one or the other will fully compensate. What the measure would be when both are lost it is unnecessary to decide, for the facts of the present case do not raise that question. Here plaintiffs were deprived of profits only, and their recovery should be limited to the profits lost. *Yates* v. *Whyel Coke Co.*, 221 Fed. 603, 607; *Union Pac. Ry. Co.* v. *Travelers' Ins. Co.*, 83 Fed. 676; approved in *F. & C. Ry. Co.* v. *Jackson*, 153 Ky. 534, 543; *Snow* v. *Pulitzer*, 142 N. Y. 263; *Fibre Board Co.* v. *Electric Co.*, 95 Me. 318, 327; *Allison* v. *Chandler*, 11 Mich. 542; *Terre Haute* v. *Hudnut*, 112 Ind. 542; 8 R. C. L. Damages, §§44-45. Such, we think, is the generally recognized rule, the rule laid down in *Pickens* v. *Boom Co.*, 58 W. Va. 11, when properly understood.

The application of the rule is more difficult than its statement. It is not necessary, indeed it is often impossible, to prove the quantum of damages with positive certainty. All that the law requires is reasonable, not absolute, certainty and we must now determine whether such requirement has been met by the proof adduced at the trial. Plaintiffs introduced no account books, ledgers or bank books in any form to show receipts and expenses. In order to prove loss of profits it is permissible to show what were the net profits for a definite period immediately preceding the severance of the electric light wires as a basis to show what they might have been during the period of such interruption of the service. *St. John* v. *Mayor of New York*, 13 How. Pr. 527, 532; *State* v. *Friedman*, 74 W. Va. 11. To do so, however, requires accounts showing receipts and expenses. If plaintiffs have been so lax in business methods as to keep no such accounts, they may not now avoid the consequences of their dereliction by permitting the jury to guess as to the amount of loss suffered, probably to the detriment of defendant.

Plaintiffs relied solely on estimates and calculations made

after the interruption from the hotel register, comparing the daily average custom and the daily average profit. They did not produce it at the trial when called for by defendant for its inspection, because, as plaintiffs stated, the children had partially destroyed it after the action was brought. In *Wittenberg* v. *Mollyneaux*, 55 Neb. 429, it was held that a hotel register without further proof as to the names thereon was inadmissible to show the extent of the business. The bald statements of a witness as to the net profits is not enough, though he referred to some memoranda to refresh his memory, when it does not appear what the memoranda were, by whom made, or whether witness knew them to be correct. *Weinman* v. *De Palma,* 15 N. Mex. 68. On the third trial of that case, the witness produced the cash book, day book and ledger and that was held sufficient, both in the state court and by the United States Supreme Court: 16 N. Mex. 302; 232 U. S. 571. A mere indefinite statement as to the amount of profits, without production of books is not sufficient: *Morrow* v. *Missouri Pac. Ry. Co.,* 123 S. W. (Mo.) 1034; *Bartow* v. *Erie R. R.,* 73 N. J. L. 12; *Podlaski* v. *Bender,* 150 Ill. App. 312; *Railroad* v. *Consumers' Ice & Power Co.,* 67 So. (Miss.) 657; *Miller* v. *Wilkes Barre Gas Co.,* 206 Pa. 254, 258; *Douglas* v. *Railroad Co.,* 51 W. Va. 523.

What the court said in the Miller case cited is peculiarly appropriate here: "We understand, that he (plaintiff) might not be able to fix with exactness his loss, but if he could not adduce evidence that would warrant a jury in fixing it to a reasonable certainty, that is his misfortune; it is no reason why a jury should be permitted to guess at the amount. He testifies, that while he burned gas his gross receipts except on Saturdays were $20.00 to $22.00 per day, and on Saturdays $65.00; that by lamp light they were about half this; that the profit was sixty percent; from what he says, obviously, this was a guess on his part; for he says he kept no book whatever; that he never put down his receipts or expenses; that he kept no bank account; that he put in his pocket whatever money came in; did not keep a bank account; he could not tell the exact amount taken in any one day of the eleven months or in the month before the meter

was taken out. Surely this was not the best evidence he as a prudent man might have had, for he knew immediately after the meter was taken out he would claim damages; he could then with some reasonable certainty have proved the receipts for the first month and his daily accounts would have shown what they were afterwards. Although he knew he would claim that defendant should pay to him a large amount of money he took no means whatever to preserve evidence to show the justness of his claim. He practically guesses at his receipts, expenses and profits and this is all the testimony there was on the subject.''

Surely a jury has no more right to guess than has plaintiff and our conclusion therefore is that while they may recover for their expense in securing the installation of the new electric service, they may not recover for the loss of prospective profits, havings failed to establish the latter to a reasonable certainty.

Of the seven instructions propounded by defendant, Nos. 1, 2 and 3 were given and 4, 5, 6 and 7 refused, and of the refusal defendant complains. Number 4 was directed expressly to an item of $44.00 contained in the bill of particulars, described therein as ''cash paid Boone Timber Company for additional equipment and repairs to motor in order to obtain electricity to light their hotel and post office for 5½ months at $8.00 per month'' thus combining expenses for repair and the cost of service without segregating repair from the service items. Owing to the ambiguity of the descriptive language used, it cannot be determined definitely whether it includes any charge except for the electric service furnished by the timber company. If it does not, then certainly the instruction was proper because had defendant furnished the current for lights, the cost to plaintiffs would have been the same.

As instruction No. 5 relating to the sufficiency of the proof to warrant the verdict and judgment for plaintiffs accords with what has been said upon that subject, it should have been given. Number 6 was refused rightly because, while defendant as a public service corporation ''had the right to make reasonable rules and regulations for the conduct of its busi-

ness and to embody such rules and regulations in written agreements between itself and its consumers'', it could not, as we have said, and by the agreement presente.l to plaintiffs it did, require a stipulation the effect of which if signed was to exonerate defendant from compliance with legal requirements whenever it should elect to discontinue its service to plaintiffs, whether it continued the service to other consumers or not. Number 7 also was refused properly because misleading and inapplicable.

The reasons assigned require reversal of the judgment, annulment of the verdict and the remand of the case for a new trial, and such is the order directed to be entered here with costs.

*Reversed, and remanded for new trial.*