Clement L. Overton

*v.*

Jack L. Fields

(No. 12006)

Submitted September 20, 1960. Decided December 20, 1960.

798

*McCluer, Davis, McDougle, Stealey & Morris, Robert B. McDougle, Fred L. Davis, Eugene T. Hague,* for plaintiff in error.

*Walter T. Crofton, Jr., Daniel A. Ruley, Jr., Wm. Bruce Hoff,* for defendant in error.

HAYMOND, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Wood County in 1958. The plaintiff, Clement L. Overton, seeks to recover from the defendant, Jack L. Fields, for permanent personal

injuries caused by the alleged negligence of the defendant in a wreck of a 1957 Ford two door sedan automobile owned and operated by the defendant in which the plaintiff was a guest passenger about ten o'clock on Saturday morning, April 6, 1957. The plaintiff and the defendant were seriously injured and the wife of the defendant was killed when the automobile, after being driven off U. S. Route No. 21 on which it was traveling in a southerly direction, crossed an open field east of the highway and came to a stop in a deep ravine about eight miles south of Parkersburg, in Wood County, West Virginia.

Upon the second trial, following a jury disagreement at the first trial, the jury returned a verdict for $30,000.00. After denying motions by the defendant to direct a verdict for the defendant and to set aside the verdict and award a new trial, the circuit court, on April 21, 1959, entered judgment for the plaintiff for the amount of the verdict with interests and costs. To that judgment this Court granted this writ of error and supersedeas on December 7, 1959.

The accident in which the plaintiff was severely and permanently injured occurred on a section of the highway which extends in a southerly direction and is practically straight for a distance of 1200 feet north of a ravine located east of the highway. The ravine leads to a culvert which passes beneath the surface of the highway near the residence of Samuel Reeder who died before the trial of this case. About two or three miles north of the scene of the wreck are two gasoline filling stations, one on each side of the road, near a place known as Province Grove. The paved portion of the highway is twenty four feet in width and is located on a slight grade to the south. The berm on each side of the highway is approximately nine feet in width, except at a point about 300 feet north of the ravine where the width of the berm on the eastern side of the road becomes wider and adjoins an open practically level field which extends south from that point for a distance of approximately 250 feet to the north bank

of the ravine. The distance between the top of the north bank and the top of the south bank of the ravine is about fifty feet. The elevation of the field at the foot of the north bank of the ravine is approximately three feet below the level of the highway. From the culvert the highway is practically straight for an additional distance of 1000 feet to the south.

The plaintiff and the defendant had been close friends for sometime before the accident and had traveled together on automobile trips. Pursuant to a previous arrangement the plaintiff came to the home of the defendant and his wife about nine o'clock on the morning of the accident to accompany them on an automobile trip from Parkersburg to Charleston to attend a high school athletic contest in which the son of the defendant was to participate in Charleston. On the trip from Parkersburg to the point of the wreck the defendant was the driver, the plaintiff occupied the right front seat, and the wife of the defendant occupied the rear seat of the automobile.

At some point south of Province Grove the defendant sighted in front of him two motor vehicles, both of which were traveling south in the right lane of the highway. One of them was a two colored blue and white Plymouth sedan driven by Wayne Sheppard, who was accompanied by his wife, and the other, in front of the automobile driven by Sheppard, was a Ford pickup truck occupied by a man and a woman and was driven by the man. The identity of the occupants of the truck was never determined by any of the parties and neither of them testified at either trial of the case.

About a mile and a half south of Province Grove the defendant overtook and passed an automobile driven by a man named Buchanan and that automobile continued to follow the automobile driven by the defendant until both of them reached the scene of the accident. Immediately before the accident there was no north bound vehicular traffic in sight and the four designated vehicles were traveling south in the straight

stretch of the highway north of the culvert at varying distances from each other of fifty to one hundred yards at speeds estimated by witnesses of thirty five to fifty miles per hour. The pickup truck was ahead of the automobile driven by Sheppard and those vehicles were traveling in that order in front of the automobile of the defendant. The automobile driven by Buchanan, who was the only eyewitness other than the plaintiff and the defendant, was following the automobile of the defendant at an estimated distance of from fifty to one hundred yards. When the defendant first sighted the pickup truck and the automobile driven by Sheppard in the vicinity of Province Grove the defendant decided to pass those two vehicles as soon as an opportunity to do so should occur.

Near the north end of the straight stretch of the highway the defendant attempted to pass the automobile driven by Sheppard but when the automobile of the defendant came to the rear fender of the automobile driven by Sheppard that automobile turned to the left to pass the truck and instead of continuing to the left the automobile driven by Sheppard and the automobile driven by the defendant turned back in line behind the truck. This unsuccessful effort of the defendant to pass the automobile ahead of him apparently occurred about 850 feet north of the ravine. After the automobile driven by the defendant had continued to travel according to some of the witnesses to a point approximately 175 feet north of the ravine the defendant again attempted to pass the automobile driven by Sheppard.

The testimony of the defendant was that when his automobile was three or four car lengths behind the automobile driven by Sheppard the defendant sounded the horn of his automobile and pulled to the left to pass the automobile driven by Sheppard but that when his automobile had reached a point "beside the Sheppard car" that car suddenly swerved into the left lane ahead of the automobile of the defendant and that the defendant, "to avoid hitting him or him hitting

me", jerked his automobile to the left. The evidence shows that when that occurred the automobile of the defendant ran off the berm of the highway and continued across the field to and over the top of the north bank of the ravine and came to rest with its front end about two feet from the top of the south bank of the ravine.

After the automobile had come to a stop the defendant was removed from the car and placed on the north bank of the ravine. The plaintiff who was unconscious was also removed from the automobile and taken to a hospital where he later regained consciousness. The wife of the defendant who was killed outright or fatally injured was also removed from the automobile.

Almost immediately after the wreck Buchanan left the wrecked automobile and summoned an ambulance and notified the state police. Within a few minutes after the wreck a member of the department of public safety arrived at the scene and made an investigation and later a report of the accident. On his return to the scene of the wreck about twenty minutes after it had happened, Buchanan had a conversation with the defendant while the plaintiff remained in the automobile in an unconscious condition, in which the defendant inquired what had happened and if he was at fault, to which Buchanan replied that he did not think it was necessarily the defendant's fault but that it appeared to him that "the car crowded him off the road at the time." The circuit court refused to permit this conversation to be introduced in evidence on the ground that the quoted statement was a mere conclusion of the witness.

The evidence relating to the manner of the occurrence of the wreck consisted of the testimony of the plaintiff, the testimony of Carl Buchanan, Wayne Sheppard, his wife Lena Sheppard, and Richard T. Nicholson, the officer who investigated the wreck, witnesses in behalf of the plaintiff, and the testimony of the defendant. Neither the plaintiff nor the defend-

ant was able to recall or testify to such details as speed, distance or the location on the highway at which the defendant in his unsuccessful effort to pass the automobile driven by Sheppard drove his automobile from the berm and entered the open field.

The testimony of the plaintiff was that the defendant made only one unsuccessful effort to pass the automobile immediately in front of him; that the plaintiff could not identify the automobile which the defendant attempted to pass or where he made such attempt except that it was in the Province Grove area; and that he did not remember anything that had happened until he became conscious in the hospital.

The witness Buchanan testified that the automobile driven by the defendant had passed the automobile of the witness about a mile and a half north of the scene of the accident; that the speed of his automobile was approximately fifty miles per hour when it was passed by the automobile of the defendant; that he continued to follow at a distance of about 100 yards the automobile of the defendant until it ran off the road and into the field; that he observed the automobile of the defendant and the other two vehicles, all of which were traveling in the right lane of the highway at a speed of about fifty miles per hour at a distance of about 100 yards apart; that the automobile of the defendant attempted to pass the automobile driven by Sheppard; that when it came to the rear fender of the automobile driven by Sheppard that automobile "swung out to pass the pickup truck"; that both automobiles then got back in line behind the truck and proceeded for a distance of about 150 yards; that the automobile of the defendant then again attempted to pass the automobile driven by Sheppard; that when it got about half way along the side of the automobile driven by Sheppard it "pulled out to pass the pickup truck again,"; that at that time the automobile of the defendant left the road, continued across the "bottom land" and into the ravine; that after the automobile of the defendant left the road at a point about fifty yards north

of the north bank of the ravine the automobile driven by Sheppard continued south on the highway; that he did not see that automobile pass the truck and did not know whether or not it passed the truck; that after the automobile of the defendant left the road and went into the ravine, the witness drove his automobile to a point about fifteen yards south of the ravine, stopped, went to the wrecked automobile and then called the police and summoned an ambulance from a filling station located along the highway some distance north of the culvert; that he returned to the wrecked automobile about twenty minutes later; that its front end was near the top of the south bank of the ravine about twenty feet east of the highway; that officer Nicholson came to the scene of the wreck while the witness was there; and that he did not hear the sound of any horn at the time defendant made either of his two attempts to pass the automobile driven by Sheppard.

The witness Sheppard testified that while traveling south on U. S. Route No. 21 in the Province Grove area he first saw the green Ford automobile of the defendant which was following him at the time; that between that point and the scene of the accident he knew of the presence behind him of the automobile of the defendant; that he saw the Ford pickup truck traveling south in front of him and that he continued to follow the truck until he passed it at a point south of the culvert; that when he last saw the automobile of the defendant on the highway it was near the entrance of the north end of the straight section of the highway on which the accident occurred; that he did not know of any attempt by the defendant to pass the automobile of the witness; that his wife was riding with him in the front seat of his automobile; that when he was 150 to 175 feet north of the ravine he started to turn out of the west lane to pass the truck; that he had previously been traveling about the center of the west lane where the truck was traveling ahead of him; that the truck was about fifty feet in front of him and traveling at a speed of about thirty five miles per hour; that his

automobile when it passed the truck was traveling at a speed of from forty to fifty miles per hour; that his automobile traveled 125 to 150 feet before all four of its wheels were in the passing lane; that his left wheels were about three or four feet west of the east edge of the pavement of the highway when he passed the truck; that he did not see any automobile beside him on his left; that he did not see the accident; that after he had passed the truck and had returned to the west lane and was about 175 to 200 feet south of the culvert, his wife told him that there had been a wreck; and that he did not hear the sound of any automobile horn in connection with any attempt of an automobile to pass him.

Lena Sheppard, who was riding in the front seat of the automobile driven by her husband, testified that she did not hear the sound of any automobile horn; that she did not see the automobile of the defendant on the straight section of the highway behind the automobile in which she was riding; but that after the automobile in which she was riding had passed south of the ravine she saw the automobile of the defendant pass over the north bank and go into the ravine.

The defendant testified that when he turned out to pass the automobile driven by Sheppard that automobile was in its proper lane; and that it was in front of the automobile of the defendant when it suddenly swerved to the left. He also testified that before making his second attempt to pass the automobile driven by Sheppard he sounded the horn of his automobile but his testimony does not disclose the intensity of the sound of the horn or whether it was an audible sound.

The witness Nicholson, the officer who investigated the accident, testified that he went to the scene of the accident immediately after he had learned in Parkersburg of the accident at about fifteen minutes after ten o'clock that morning; that the wrecked automobile which upon his arrival he found in the ravine was a 1957 green Ford two door sedan; that the front of the

automobile was about twenty eight feet east of the east edge of the hard surface of the highway; that its front end was approximately two feet from the top of the south bank of the ravine; that he examined the highway and found no skid marks on the highway; that he found two straight tire tracks extending on a diagonal from the berm on the east side of the road to the top of the north bank of the ravine; that the distance of these marks which he measured was sixty six feet; and that the distance from the edge of the pavement where the marks began to the front end of the automobile in the ravine was 113 feet.

The defendant assigns as reversible error the action of the circuit court (1) in refusing to direct the jury to return a verdict for the defendant; (2) in giving certain instructions offered by the plaintiff; (3) in refusing to give certain instructions offered by the defendant; and (4) in excluding certain evidence offered by the defendant.

In support of his assignments of error the defendant insists that under the evidence the circuit court should have directed a verdict for the defendant or given Instruction 1 offered by the defendant which would have directed the jury to return a verdict in his favor and that the action of the court in refusing to do either constituted reversible error. The contention of the defendant on this point is that the conduct of the defendant in the operation of his automobile at and immediately before the accident did not constitute negligence, that such conduct was not the proximate cause of the injury to the plaintiff, and that when Sheppard turned his automobile to the left in front of the defendant in attempting to pass the pickup truck the defendant was confronted with a sudden emergency in which he exercised the care of a reasonably prudent person in like circumstances. The defendant further contends that the evidence shows that the conduct of Sheppard was the proximate cause of the injury to the plaintiff. These contentions are devoid of merit and must be rejected. The material facts, some of which are

undisputed and some of which are conflicting, as shown by the evidence which has been summarized earlier in this opinion, are of such nature that reasonable men may draw different conclusions from them as to the factual questions of proximate cause, of the existence of a sudden emergency, and of the care exercised by the defendant in such emergency. Under the evidence those questions of fact were for the jury to determine. The questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them. *Lewis v. Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; and the numerous cases cited in the opinion in that case. It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses regarding them is conflicting; and the finding of the jury on such facts will not ordinarily be disturbed by this Court. *Lewis v. Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Gilkerson v. Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorn v. Addison Bros. and Smith,* 119 W. Va. 479, 194 S. E. 771. When a case involving conflicting testimony and circumstances upon the questions of negligence and contributory negligence has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it. *Lewis v. Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Wilson v. Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher v. Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Dangerfield v. Akers,* 127 W. Va. 409, 33 S.E. 2d 140; *Webb v. Brown and Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d 898; *Ware v. Hays,* 119 W. Va. 585, 195 S. E. 265. For these reasons this Court will not disturb the verdict of the

jury on any of the foregoing grounds asserted and relied on by the defendant.

The defendant complains of the action of the circuit court in refusing, upon objection, to admit in evidence the conversation between the defendant and the witness Buchanan, which occurred out of the presence of the plaintiff, about twenty minutes after the wreck while the defendant was lying on a bank of the ravine, and in which Buchanan told the defendant that the accident was not necessarily his fault but that it appeared to the witness that "the car crowded him off the road at the time." The defendant contends that the conversation is admissible as part of the *res gestae*. Whether it was or was not part of the *res gestae*, need not be and is not now decided. The statement that the accident was not the fault of the defendant and that "the car had crowded him off the road" is a mere conclusion of the witness relating to the vital issue of the negligence of the defendant as the proximate cause of the injury sustained by the plaintiff. Whether the action of Sheppard in turning his automobile to the left in front of the automobile of the defendant caused that automobile to go off the road and injure the plaintiff was a question to be determined only by the jury.

When the opinion of a witness, not an expert, is offered in evidence, and he is no better qualified than the jurors to form an opinion with reference to the facts in evidence and the deductions to be properly drawn from such facts, his opinion evidence is not admissible. Point 4, syllabus, *Lively v. Virginian Railway Company,* 104 W. Va. 335, 140 S. E. 51. See also *Clay v. Walkup,* 144 W. Va. 249, 107 S. E. 2d 498; *Mullins v. Baker,* 144 W. Va. 92, 107 S. E. 2d 57; *Thrasher v. Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Stone v. Safe Insurance Company,* 109 W. Va. 739, 156 S. E. 106; *Collar v. Mc-Mullin,* 107 W. Va. 440, 148 S. E. 496; *Hancock v. Snider,* 101 W. Va. 535, 133 S. E. 131; *Cavender v. The Cline Ice Cream Company,* 101 W. Va. 3, 131 S. E. 862; *Barna v. Gleason Coal and Coke Company,* 83 W. Va.

216, 98 S. E. 158; *Starcher v. South Penn Oil Company,* 81 W. Va. 587, 95 S. E. 28; *Lawrence's Adm'r. v. Hyde,* 77 W. Va. 639, 88 S. E. 45; *Kunst v. City of Grafton,* 67 W. Va. 20, 67 S. E. 74, 26 L.R.A., N.S., 1201; *Delmar Oil Company v. Bartlett,* 62 W. Va. 700, 59 S. E. 634; *Overby v. Chesapeake and Ohio Railway Company,* 37 W. Va. 524, 16 S. E· 813; *McKelvey v. The Chesapeake and Ohio Railway Company,* 35 W. Va. 500, 14 S. E. 261; *Welch v. Franklin Insurance Company,* 23 W. Va. 288. From the facts in evidence, which show that there was no actual collision between the automobile of the defendant and the automobile driven by Sheppard, it is clear that the witness Buchanan was not more qualified than the jurors to form an opinion with reference to such facts and the deductions to be properly drawn from them, and for that reason his opinion relating to the issue to be determined by the jury was not admissible.

Moreover whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused. *Lewis v. Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; *Toppins v. Oshel,* 141 W. Va. 152, 89 S. E. 2d 359; *Tennessee Gas Transmission Company v. Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *Byrd v. Virginia Railway Company,* 123 W. Va. 47, 13 S. E. 2d 273; *State v. Brady,* 104 W. Va. 523, 140 S. E. 546. It does not appear that in rejecting this evidence there was any abuse of discretion by the circuit court.

The defendant vigorously asserts that the action of the circuit court in giving Instruction 6A(1) and Amended Instruction 6C, offered by the plaintiff, and in refusing to give Instructions 4, 9, 11, 13, 15, 17, 21, 22, 24A, 25A, 26 and 28, offered by the defendant, constituted reversible error.

Instruction 6A(1), a binding instruction, told the jury, in effect, that the driver of an automobile overtaking from the rear and attempting to pass a for-

ward automobile traveling in the same direction must not only give an audible signal but before attempting to pass must also be reasonably assured that the driver of the forward automobile knew he was behind him, heard the signal and then accorded him the right of way; that if the defendant overtook and attempted to pass from the rear the forward Sheppard automobile and before attempting to do so sounded his horn but failed to exercise ordinary care to determine whether the driver of the forward automobile knew he was behind him, heard the signal and would accord the rear driver the right of way and if the accident involving the automobile driven by the defendant in which the plaintiff was riding and the injury to the plaintiff proximately resulted from such action on the part of the defendant, the defendant was guilty of negligence and that the jury should find for the plaintiff unless it found by a preponderance of the evidence that the plaintiff was guilty of contributory negligence. This instruction, in requiring the driver of an overtaking automobile before attempting to pass a forward automobile traveling in the same direction upon a highway to be reasonably assured that the driver of the forward automobile knew of the presence of the overtaking automobile and had heard its signal and accorded the driver of the overtaking automobile the right of way, imposes a higher duty upon the driver of such overtaking automobile than is imposed upon him by the law of this State. In imposing such duty the instruction clearly misstates the law and for that reason the action of the court in giving it constituted reversible error.

The statute in effect at the time of the accident prescribes the rules which govern the overtaking and the passing of vehicles proceeding in the same direction on a public highway.

Section 3 (a), Article 7, Chapter 17C, Code, 1931, as amended, provides, to the extent here applicable, that ''The driver of a vehicle overtaking another vehicle proceeding in the same direction shall give an audible signal and pass to the left thereof at a safe distance

and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.''

Section 6 of the same article and chapter also imposes duties upon the driver of a vehicle overtaking and passing a vehicle proceeding in the same direction on a public highway under certain designated conditions, but those conditions did not exist at the time and the place of the accident here involved and the provisions of that section do not apply to the facts of this case.

Under the foregoing statutory provision the driver of a vehicle overtaking another vehicle proceeding in the same direction on a public highway is required to give an audible signal and, in passing to the left of such vehicle at a safe distance and in not again driving to the right of the highway until safely clear of the overtaken vehicle, to exercise the care of an ordinary prudent person in the attendant circumstances. If he complies with the statute and exercises ordinary care he will not be guilty of negligence and he is not required to satisfy any additional requirement such as the acquisition of any assurance that the driver of the automobile in front of him has heard his audible signal, *Clayton v. McIlrath,* 241 Iowa 1162, 44 N. W. 2d 741, 27 A.L.R. 2d 307, is aware of his presence, or has accorded him the right of way to pass such vehicle. If such assurance is required it would be impossible for the driver of a vehicle to pass any other vehicle in front of him proceeding in the same direction upon a public highway without incurring liability for any injury that results from his act in overtaking and passing, or attempting to pass, any such vehicle. Independently of the statutory requirement that he give an audible signal, the rule which governs the action of a driver of an overtaking vehicle is expressed in this language in 5A Am. Jur., Automobiles and Highway Traffic, Section 352: ''The driver of an automobile is bound, in overtaking and attempting to pass another vehicle, to exercise ordinary care and skill in so doing. He should attempt to pass an overtaken car only when he

can do so with safety to travelers whom he may meet, as well as to the vehicle he is passing. The measure of his duty necessarily depends on the condition of traffic and other circumstances." See also 60 C. J. S., Motor Vehicles, Section 326.

Amended Instruction 6C, in defining the duty of the driver of an automobile overtaking from the rear and attempting to pass a forward automobile traveling in the same direction upon the highway, told the jury that in order to satisfy the legal requirement of the exercise of ordinary care he is bound to exercise a high degree of care commensurate with the existing circumstances to see that the situation is such that such forward automobile can be passed in safety. Though this instruction was apparently based upon point 1 of the syllabus in *Haffner v. Cross,* 116 W. Va. 562, 182 S. E. 573, which states that the driver of an automobile attempting to pass another car in front of him is bound to exercise a high degree of care and see that the situation is such that he can pass in safety, this Court is of the opinion that the degree of care which a driver of an automobile attempting to pass another automobile in front of him is bound to exercise is not a high degree of care but ordinary care in the attendant circumstances and that the syllabus in the *Haffner* case contains an incorrect statement of law and should be and now is disapproved and overruled. As the instruction misstates the law, even though it contains expressions which indicate that a high degree of care might mean ordinary care in the existing circumstances, the dual and inconsistent standards of the care required, as indicated by the instruction, necessarily tended to mislead and confuse the jury. For that reason the instruction should have been refused and the action of the circuit court in giving it must be held to be reversible error. An instruction which incorrectly states the law is erroneous and should be refused. *Wilson v. Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher v. Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Moore v. Turner,* 137 W. Va. 299, 71 S. E. 2d

342; *Thomason v. Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Gilkerson v. Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Parrish v. City of Huntington,* 57 W. Va. 286, 50 S. E. 416. An instruction which tends to mislead the jury is erroneous and should be refused. *Wilson v. Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Gilkerson v. Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Wilson v. City of Elkins,* 86 W. Va. 379, 103 S. E. 118; *Bartley v. Western Maryland Railway Company,* 81 W. Va. 795, 95 S. E. 443; *Chambers v. Spruce Lighting Company,* 81 W. Va. 714, 95 S. E. 192; *Brogan v. Union Traction Company,* 76 W. Va. 698, 86 S. E. 753; *Laraway v. Croft Lumber Company,* 75 W. Va. 510, 84 S. E. 333; *Walker v. Strosnider,* 67 W. Va. 39, 67 S. E. 1087, 21 Ann. Cas. 1; *Stewart v. Doak Brothers,* 58 W. Va. 172, 52 S. E. 95; *Parrish v. City of Huntington,* 57 W. Va. 286, 50 S. E. 416; *Henry v. Davis,* 7 W. Va. 715. An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not injured by the giving of such instruction. *Cato v. Silling,* 137 W. Va. 694, 73 S. E. 2d 731, certiorari denied, 348 U. S. 981, 75 S. Ct. 572, 99 L. Ed. 764, rehearing denied, 349 U.S. 924, 75 S. Ct. 659, 99 L. Ed. 1256. The record does not show that the giving of the foregoing instructions did not injure the defendant.

Instruction 9, offered by the defendant and refused by the court, would have informed the jury that the defendant was not liable for the injury sustained by the plaintiff if the defendant was exercising reasonable care and prudence under the circumstances and could not reasonably have foreseen and avoided the accident. This instruction contains a correct statement of law and is supported by the evidence. For these reasons, it should have been given and the action of the court in refusing it constituted reversible error.

Instruction 25A, also refused, was offered by the defendant in lieu of Instruction 6A(1) offered by the plaintiff and given by the court. Instruction 25A cor-

rectly states the law concerning the duty of the driver of an overtaking automobile to exercise ordinary care in the circumstances but the statement in the instruction with reference to an audible signal by the defendant before he attempted to pass the automobile driven by Sheppard is not based upon the evidence, and for that reason the instruction was properly refused. Though the defendant testified that he sounded his horn before attempting to pass the automobile driven by Sheppard there is no evidence that he gave an audible signal at any time. The testimony of other witnesses that they did not hear the sound of an automobile horn does not create a conflict between their testimony and that of the defendant on that point, but the testimony of the witnesses that they did not hear the sound of the horn indicates that the sound did not constitute the audible signal required by the statute. This Court has consistently held that an instruction which correctly states principles of law but which contains a statement which is not based on the evidence is erroneous and should be refused. *Cato v. Silling,* 137 W. Va. 694, 73 S. E. 2d 731, certiorari denied, 348 U. S. 981, 75 S. Ct. 572, 99 L. Ed. 764, rehearing denied, 349 U. S. 924, 75 S. Ct. 659, 99 L. Ed. 1256; *Higgs v. Watkins,* 138 W. Va. 844, 78 S. E. 2d 230; and the numerous cases cited in the opinions in those cases.

It is not necessary, in the decision of this case, to discuss in detail the other instructions which were offered by the defendant and which the court refused to give. All of them have been carefully considered and have been found to be either incomplete, or to misstate the law, or to be not based upon the evidence, or to tend to mislead or confuse the jury, and for one or more of those reasons they were properly refused.

The judgment of the Circuit Court of Wood County is reversed, the verdict of the jury is set aside, and this case is remanded to that court for a new trial, which is here awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*