# CHARLESTON.

LINDSEY v. BLUEFIELD PRODUCE AND PROVISION COMPANY.

Submitted May 2, 1922.   Decided May 9, 1922.

1.  APPEAL AND ERROR—*On Review of Directing of Verdict, for Defendant, the Appellate Court will Disregard Testimony Conflicting With Plaintiff's.*

    Where there has been a directed verdict for the defendant, and error is assigned for that reason, the appellate court will consider the undisputed facts, and discard all testimony which conflicts with that of plaintiff, in determining whether plaintiff has made a case which should go to the jury. (p. 119).

2.  TRIAL—*Numerical Preponderance of Witnesses Will Not Justify Directing a Verdict.*

    Numerical preponderance of witnesses on one side of a controversy will not justify a court in directing a verdict. (p. 124).

3.  SAME—*Where Fair-Minded Men Could Draw Different Conclusions, the Case is for the Jury, Unless the Legal Conclusions Would Warrant Setting Aside a Contrary Verdict Thereto.*

    Where there is an issue of fact, or credibility of witnesses, or the preponderance of evidence, or where the admitted facts are such that fair minded men might draw different conclusions from them, the case is one that should be submitted to the jury, unless the legal conclusions are so plain that a verdict contrary thereto would have to be set aside as one rendered through passion, prejudice or caprice. (p. 124).

4.  NEGLIGENCE—*Customer Not Guilty of Contributory Negligence in Deviating From Route.*

    Where the owner of a mercantile building directs a customer to carry samples of butter from the office to the cold storage department located upon another floor and in a distant part of the building without direction of the way he shall travel, and upon returning the customer deviates from the route safely pursued in reaching the cold storage and pursues another route apparently direct and safe, and is injured by falling into an open elevator shaft located in a dimly lighted portion of the shipping room through which his route lay, he is not guilty of contributory negligence simply because

he returned by a different way from the one he traveled in depositing the samples.  (p. 124).

5.    SAME—*Contributory Negligence of Person Falling Into Shaft Held for Jury.*

   In such case, there being a conflict in the evidence as to whether the shaft was lighted and the danger so apparent that a prudent man would not have been injured, or whether it was in semi-darkness and could not be readily seen, the question of contributory negligence on his part should go to the jury.  (p. 124).

6.    SAME—*Statutes Requiring Guarding of Elevator Shafts Inapplicable to Customers or Licensees.*

   Sec. 60, Chap. 15-H Barnes' Code 1918, which requires that the openings of elevators on each floor of mercantile, and other buildings therein named, shall be protected by good and sufficient self-closing hatches, or strong guard rails at least three feet high, and due vigilance used to keep same closed at all times, except when in actual use, is designed for the protection of employees therein, and not for customers or licensees, or trespassers.  (p. 125).

Error to Circuit Court, Mercer County.

Action by C. L. Lindsey against the Bluefield Produce & Provision Company, and, from a judgment nil capiat, plaintiff brings error.

*Reversed and remanded.*

*Russell S. Ritz,* for plaintiff in error.

*McClaugherty & Richardson, Sanders, Crockett, Fox & Sanders,* and *Strother, Sale, Curd & Tucker,* for defendant in error.

LIVELY, JUDGE:

The lower court instructed the jury to find for the defendant, and upon a verdict in response to the instruction, judgment of *nil capiat* was entered, and plaintiff prosecutes this writ of error.

Plaintiff was engaged in buying and selling farm products, such as poultry, eggs, potatoes, butter and the like, and defendant was a wholesale dealer in such products in the city

of Bluefield. Plaintiff shipped to defendant a box containing 50 lbs of butter and on the same day, September 20, 1920, came to defendant's place of business for the purpose of making a contract with it for future purchases of butter, and while in defendant's business house stepped into an open elevator shaft and was severely injured. There is direct and irreconcilable conflict in the evidence on practically every material fact. At the conclusion of the evidence the court, conceiving that plaintiff was a mere licensee, or that he had been guilty of contributory negligence, instructed a verdict for defendant. Plaintiff says that it was for the jury to determine whether he was invited to go upon the premises where he received the injury or was a mere licensee; and whether he was guilty of contributory negligence in stepping into the elevator shaft under the circumstances was likewise a jury question, and therefore the court erred in giving the peremptory instruction. On the other hand defendant asserts that plaintiff was a trespasser upon the premises where injured; and that he was clearly guilty of contributory negligence, and could not recover even if he was a customer and lawfully at the place where the injury occurred. The duties of the owner of premises to one invited thereon are quite different from those owing to a mere licensee or trespasser. To the former he owes the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition, so that his invitee may not be unnecessarily or unreasonably exposed to danger; and if there are defective floors, stairways, unguarded elevator shafts, pit falls or trap doors or other harmful devices upon the premises by reason of which injuries are inflicted upon those lawfully there, without fault on their part, it is generally held that the owner is liable; on the other hand, the owner owes no duty to a licensee or trespasser, unless imposed by statute, as to the condition of the premises, except that he should not knowingly let him be injured or wilfully cause him harm. 9 R. C. L. 1256. To which class of persons did plaintiff belong when the injury occurred? Manifestly the answer depends upon the evidence. Plaintiff says he was on the premises for the purpose of sell-

ing butter and had sent a sample box of butter which was then in defendant's cooler where he went with one of defendant's employes, first passing from the office down a flight of stairs into a shipping room, thence through a box car standing on a spur track which extended into the building, and thence to the cooler, where he extracted from the box of butter a sample, returned to the office by the same route, where negotiations for sale of the butter were completed; he was then requested by the manager, Hoge, to take the sample and carry it back to the box in the cooler which he did, and on returning, stepped into the open elevator shaft and was injured. Hoge flatly contradicts plaintiff and says that there were no negotiations for sale or purchase of butter on that day, butter was not mentioned, and no samples exhibited to him; that plaintiff called at the office about 10 o'clock A. M., and, being then busy with a meeting of salesmen then in progress, he directed plaintiff to call again in the afternoon for discussion of his business which he, Hoge, supposed related to an entirely different business matter, and that he did not request plaintiff to take samples of butter to the cooler. Hoge is corroborated to some extent by other witnesses. On this conflicting evidence is it the province of the court to determine what is the fact? Surely, it is a query for jury determination. On a motion for a directed verdict it must be considered that plaintiff's statement is true. The conflict in the evidence is discarded. Hence, plaintiff was upon the premises upon invitation, and defendant owed him the duty of exercising reasonable and ordinary care in protecting him from injury on his return trip to the cooler to replace the sample butter. Did defendant exercise ordinary and reasonable care to protect the plaintiff in his journey, and if not, was plaintiff guilty of contributory negligence? Likewise, in determining these questions we must discard all conflict in the evidence, on the present status of the case. A description of the premises will aid. A plan or drawing was used at the trial, but is not found with the printed record, and it is difficult to obtain a clear conception from the verbal evidence. We give the description found in defendant's brief. "Its office

was in one part of the building, its ware room or shipping room in another part, on a lower level than the office and reached from the office by steps. Entrance by visitors and customers was through the office only. Its cold storage department was in another part of the building and reached from the office by going down the steps to the wareroom, then by a provided, level, safe walkway, not through the wareroom by the elevator. The wareroom was for use only of employees, not for customers or visitors. Persons were not permitted to go about the building other than in the office without being accompanied by an employee of defendant. Between the wareroom and cold storage department was a space sufficiently large in width to place railroad cars, on railroad track built in this space, and of sufficient length to accommodate two cars. When railroad cars are placed in this space their doors open opposite doors of the wareroom on one side and the cold storage department on the other. The floor of the cars are variable in height, some level with the wareroom floor and some not so. The space between the wareroom and cold storage sides of the building and the cars is bridged by gang planks, several feet wide and several feet long, run from the building into the car doors when the car doors are opened and the cars are being loaded or unloaded. Unless the car doors are open one cannot go from the wareroom to the cold storage nor from the cold storage to the wareroom over and across the railroad track space without climbing over or crawling under the cars. When the plaintiff was hurt two cars were placed on the track; the upper one was open and was being unloaded by defendant's employees. * * * In the wareroom and near the door of the upper car, and the wareroom-door opposite this car door, was an elevator, operating from the basement under the wareroom to the upper floors. One side of the elevator and its shaft was about six inches from the upper line of the car and wareroom doors. The elevator shaft was about six feet by eight feet in size. The distance from the wareroom floor to the basement floor was between seven and eight feet. Three sides of the elevator shaft in the wareroom were boarded and nailed up. The

fourth side was protected by a gate which was raised when the elevator shaft was in use and lowered when not in use. When plaintiff was hurt the elevator and shaft were in use by defendant's employees. * * * The guard gate was not down because the elevator shaft was in use, requiring the gate to be raised.'' Plaintiff says he had sent the box of butter to defendant the day he left for Bluefield and it had been received by defendant when he arrived at its office, and was told by the manager it had been placed in the cold storage room, or cooler, and after being shown over the upper part of the building by Sweeney, an employee, he returned to the office and was directed by Hoge to bring a sample of the butter from the cooler and he did so accompanied by Sweeney. They went out of the office down the steps to the wareroom, thence through one of the cars on the spur track and into the cold storage where the sample butter was obtained, thence back to the office the same way. After exhibiting the samples to the manager and closing the trade, he was requested by the manager to take the sample back to the cold storage, as he knew the way and the manager had a stiff knee and could not accompany him. He did so, following the same route and on his return passed through the upper car from which grapes were being unloaded, and used a different route through the wareroom and in doing so walked into the elevator shaft. He says the room at that place was not lighted sufficiently and he did not see the open shaft which was about six inches from the door; that he was using a direct route back to the office, and presumed he was in safety. Plaintiff is contradicted in his statement by Hoge, Sweeney, Walk, Hamlet, Barlow and perhaps others. As heretofore stated Hoge, the manager, says that butter was not mentioned, and of course he could not and did not request plaintiff to return samples of butter to the cold storage. Sweeney says he showed plaintiff over the building and took him down to the wareroom, thence by the level, safe walk way, not through the wareroom, back to the cold storage department, and that no butter was taken therefrom, either by himself or plaintiff. Sweeney is corroborated by the others who were working in the wareroom.

and unloading the grapes. They state that plaintiff and Sweeney came through the provided pass way to the cold storage, and that they saw no butter or samples of butter carried away. These witnesses say the elevator shaft could be plainly seen, was lighted by an electric light near-by, and in many other important particulars contradict plaintiff. Looking at the printed record it would seem that the preponderance of the evidence is in favor of defendant. But is it not for the jury to say which line of testimony is worthy of belief? This court does not see the witnesses on the stand, and cannot judge of their truthfulness by their demeanor, appearance and candor. If the jury believed the plaintiff was telling the truth, and returned a verdict accordingly, it is likely a judgment thereon would have been sustained. Mere numerical preponderance of witnesses on one side of a controversy will not justify a court in directing a verdict. *Harman* v. *Appalachian Power Co.*, 77 W. Va. 48. A verdict will not be disturbed because it is against the testimony of the greater number of witnesses. *Coalmer* v. *Barrett*, 61 W. Va. 237; *Sheff* v. *City of Huntington*, 16 W. Va. 307.

Discarding the conflicting evidence, which we must do in the present status, and considering the case as if plaintiff had been directed to replace the samples of butter in the cold storage, and hence, lawfully upon the premises, we cannot say that the premises were in a reasonably safe condition for one not familiar therewith, by reason of the unguarded open elevator shaft in an unlighted dim place where plaintiff would likely pass. Nor can we say under all the circumstances that plaintiff was guilty of contributory negligence when on his return, he slightly deviated from the route through the wareroom previously traversed with Sweeney, and in the dim light mistook the elevator shaft for the door which was within six inches therefrom. Generally, contributory negligence is a question of mixed law and fact to be determined by the jury from all the circumstances under instructions from the court, rather than a question of law to be decided by the court. *Williams* v. *Belmont Coal & Coke Co.*, 55 W. Va. 84; *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149; *Sebrell* v. *Barrows*, 36 W.

Va. 212; *Snyder* v. *Pittsburg Ry. Co.,* 11 W. Va. 14; *Carring-ton* v. *Ficklin,* 32 Gratt. 670. Where facts are in dispute or conflicting, or the credibility of witnesses is involved, or the preponderance of evidence, or where the undisputed facts are such that fair minded men may arrive at different conclusions therefrom, it is a case for the jury, where the question of negligence is involved. *Ketterman* v. *Dry Fork R. R. Co.,* 48 W. Va. 606. We are of the opinion that the court erred in directing a verdict for the defendant. Exceptions were taken to admission and exclusion of evidence, but they are not insisted upon here, and we perceive no error therein.

Plaintiff's instruction No. 1 which tells the jury that under the law of this state openings of all hatchways, elevators and well holes upon each floor of every mercantile building shall be properly protected by good and sufficient trap doors, self closing hatches, or strong guard rails at least three feet high, and all due diligence used to keep such trap doors closed at all times, and that if the jury believed plaintiff was on the premises as an invitee or customer and, without negligence on his part, walked or fell into an unguarded elevator shaft, and was injured, they should find for the plaintiff, was properly refused. It tells the jury that the absence of self closing doors or guard rails at the elevator opening was in itself negligence on the part of defendant under the statute, sec. 60, chap. 15 H, Barnes' Code 1918. That statute was enacted expressly for the prevention of accidents and for preservation of life of the employees in manufacturing, mechanical, mercantile and other establishments, and was not designed for the protection of the general public. By reference to the Act, chap. 19, Acts 1901, it will be seen not only from the title but from all the sections that such was the design. Section 1, requires that machinery must be guarded when possible; section 2 (under discussion) that openings of elevators, etc., shall be guarded; section 3, separate water closets for both male and female employees, and suitable places for female employees to wash and change their clothing must be furnished; section 4, requires comfortable seats for females when not in performance of their duties; section 5, requires clean-

liness and sanitary conditions in the buildings; section 6, provides for penalty for violation of any of the provisions of the act; and section 7, requires the Commissioner of Labor to enforce the provisions of the Act. Plaintiff, not an employee of defendant, can claim no duty owing to him by the latter by virtue of this statute. *Glaser* v. *Rothschild*, 22 L. R. A. (N. S.) 1045.

We can see no valid objection to plaintiff's instruction No. 2. It tells the jury that if plaintiff was requested to go to the cold storage he had a right to assume that the premises were in a reasonably safe condition, and he could pursue such way thereto as he found open and unobstructed, unless directed to pursue another route, and if in returning, without negligence on his part he stepped into an unguarded elevator shaft he is entitled to recover. The criticism of this instruction is that plaintiff had no right to use any route except that which had been provided, and when he went by a different way he was negligent and contributed to any injury he might receive, and therefore could not recover. According to plaintiff's evidence he travelled the same route he had previously followed in company with Sweeney, and on returning after replacing the sample butter, travelled a slightly different route which appeared to be as safe and direct as that by which he came, and he had not been directed which way to take nor warned of any dangers. The fact that he came back by a different route was not in itself negligence. Whether he was negligent in stepping into the open elevator shaft under the circumstances is a more serious question, which is conserved in the instruction which tells the jury it must find that he did so "without negligence on his part" before verdict can be returned in his favor.

The judgment and verdict will be set aside, and a new trial awarded.

*Reversed and remanded.*