HAROLD N. LEWIS, *Administrator of the Estate of* CORA ALICE LEWIS *Deceased*

*v.*

JOHN MOSORJAK *and* HOMER McDONALD

(Nos. 10934—10982)

Submitted April 29, 1958. Decided July 3, 1958.

*Clarence E. Martin, Jr., Ralph J. Bean, J. S. Zimmerman, Ralph W. Haines,* for plaintiffs in error.

*H. Gus Muntzing, James E. Ansel,* for defendant in error.

HAYMOND, PRESIDENT:

In this action of trespass on the case instituted in the Circuit Court of Hampshire County in January 1957, the plaintiff, Harold N. Lewis, Administrator of the Estate of Cora Alice Lewis, deceased, seeks a recovery from the defendants, John Mosorjak and Homer McDonald, of damages for the alleged wrongful death of his mother, Cora Alice Lewis, in a collision between a 1953 model Henry J automobile owned and operated by the plaintiff and a 1952 model Chevrolet automobile owned and operated by the defendant, John Mosorjak, which occurred during the afternoon of Monday, April 2, 1956, on U. S. Highway No. 50 in Hampshire County and which the plaintiff alleges was caused by the negligence of the defendants.

The declaration contains six counts. The first count charges concurrent negligence against the defendants Mosorjak and McDonald; the second, third and fourth counts charge separate acts of negligence against the defendant Mosorjak; and the fifth and sixth counts charge separate acts of negligence against the defendant McDonald. At the conclusion of the evidence introduced in behalf of the plaintiff upon the trial of the case, the plaintiff withdrew his claim for damages insofar as it was based upon each of the last five counts of the declaration and elected to reply upon the first count.

The first count, on which the plaintiff bases his claim to recover, charges these negligent acts and omissions of the defendant Mosorjak: (1) That he met and attempted to pass the automobile driven by the plaintiff; (2) that he failed to operate his motor vehicle at a reasonable and prudent rate of speed in view of the wet condition of the surface of the highway; (3) that he

failed to keep his motor vehicle under control; (4) that he failed to keep a lookout for other traffic using the highway; and (5) that he failed to keep to his right of the center line of the highway when meeting and attempting to pass the vehicle of the plaintiff; and charges these negligent acts and omissions of the defendant McDonald: (1) That he failed to keep a lookout for other traffic using the highway; (2) that in entering upon the highway from the exit from a side road he failed to yield the right of way to the defendant Mosorjak when the approaching automobile operated by the defendant Mosorjak was so near the exit that an immediate traffic hazard was created; and (3) that he failed to stop before entering the highway. The demurrer of the defendant Mosorjak to the declaration was overruled and each defendant entered his plea of the general issue.

At the conclusion of the evidence introduced in behalf of the plaintiff separate motions by each defendant to strike the evidence and direct a verdict for each defendant were overruled and at the conclusion of all the evidence similar motions by each defendant were overruled. The jury returned a verdict in favor of the plaintiff for $5,000.00 against both defendants. Separate motions by each defendant to set aside the verdict of the jury and grant a new trial and in arrest of judgment were likewise overruled and by order entered September 3, 1957, judgment was rendered in favor of the plaintiff and against both defendants for the amount of the verdict with interest and costs. To that judgment separate writs of error were granted by this Court upon the application of each defendant and upon submission of this case for decision the writs of error were consolidated and heard together.

The collision which resulted in the death of plaintiff's intestate occurred about one o'clock in the afternoon of April 2, 1956, on a main public highway designated as U. S. Highway No. 50, at a point about four and one-half miles east of Romney and about two-tenths of a mile west of the village of Shanks in Hampshire County, West Vir-

ginia. In that area the highway, on a gradual curve to the right, extends from east to west, is improved with a black asphalt surface and is practically level or on a slight grade for a distance of several hundred feet east and west of the place where the collision occurred. The improved portion of the highway is approximately twenty four feet in width. The berm on the south side is about five feet in width and the berm on the north side is about eight feet in width.

Immediately to the south of the highway a curving section of road on the former location of the highway stems from the highway and extends in an easterly direction a distance of approximately 1,000 feet and then leads into the highway. The space or area between the highway and this roadway is used as a small park and picnic grounds. The western end of this roadway forms an entrance from the highway to the picnic grounds for motorists traveling east upon the highway and the eastern end constitutes an exit from the grounds to the highway. The distance from the entrance at the west end to the exit at the east end of the side road as measured in a straight line on the highway is approximately 900 feet. The view from the center of the exit along the highway to the west is clear and unobstructed for a distance of at least 900 feet and along the highway to the east for a distance of at least 600 feet.

A few minutes before the collision occurred the defendant McDonald, who was sixty eight years of age and who resides in Winchester, Virginia, returning to that place from Clarksburg in his 1946 model Ford automobile, accompanied by his wife, left the highway on which he had been traveling in an easterly direction and drove his automobile upon the side road where he stopped and removed from the windshield and windows dirt cast upon them from the wet highway on which he had been traveling before entering the side road south of the highway. He then drove his automobile to the east end of the side road and stopped it near a large stop sign which was located on the right side of the side road at a distance of

about forty five feet from the intersection of the eastern exit of the side road with the southern edge of the improved portion of the highway.

As or immediately before the defendant McDonald drove his automobile upon the highway, the defendant Mosorjak, who was forty years of age and was returning with his wife from Cairo, West Virginia, a town located about 150 miles west of Romney, to his home in Baltimore, Maryland, traveling east on the highway in a green 1952 model Chevrolet four door sedan automobile owned and operated by him approached the eastern exit of the side road at a speed of forty to forty five miles per hour. When a short distance west of the exit from which the automobile of the defendant McDonald was driven upon the highway, the defendant Mosorjak, in attempting to avoid a collision with the automobile of the defendant McDonald, suddenly applied the brakes of his automobile which continued its forward motion, veered to the left, crossed the broken white center line of the highway, and collided with the 1953 model Henry J automobile of the plaintiff, who was fifty three years of age and was returning from Augusta, Virginia, to his home in Romney, accompanied by his wife and mother, while he was driving it west on the right side of the highway at a speed of approximately forty five miles per hour. The front end and the right front side of the automobile of the defendant Mosorjak struck the front end and the right front side of the automobile of the plaintiff and turned it around. When it was struck the automobile of the plaintiff was either partly on the berm on the right side of the highway or its left wheels were approximately five and one-half feet north of the center line and its rear was twenty feet and two inches from the southern edge of the improved portion of the highway and fifty three feet east of the exit from the side road. When the automobile of the defendant Mosorjak stopped after the collision, it was fifteen feet north of the northern edge of the improved portion of the highway. No witness was able to locate exactly the point on the highway at which the collision occurred.

Both automobiles were almost completely demolished and the right front wheel of the automobile of the plaintiff was driven through the front right section of its floor by the force of the impact. Plaintiff's intestate who according to the testimony of the plaintiff was seventy six years of age was fatally injured and died within a few minutes after the collision and before she could be removed from the scene of the wreck. The other occupants of the two wrecked automobiles were seriously injured and shortly after the wreck occurred were taken to a hospital for treatment.

Rain had fallen for sometime before the wreck but when it occurred the rainfall had ceased. Though there were some dry spots on the highway most of its surface was wet at and before the time of the collision. There were several skid marks on both sides of the center line of the highway, but, due to the wet condition of the highway and the debris from the wreck, no witness was able to trace them to either of the wrecked automobiles or associate them with the wreck.

The automobile of the defendant McDonald was not struck by the automobile of the defendant Mosorjak. After it entered the highway it proceeded on its way east. According to the defendant McDonald he heard the collision when his automobile had traveled about fifty feet east of the exit. He continued to drive along the highway until he came to a store and service station where he left the automobile and walked back to the scene of the wreck. He remained there a few minutes and believing that he had not been involved in the accident returned to his automobile and drove it to his home in Winchester. A few days later, having learned that officers were looking for him in connection with the wreck, he came to Romney, consulted an attorney, and gave a written statement to a member of the Department of Public Safety who was engaged in an investigation of the collision. The plaintiff and the defendant Mosorjak also gave written statements concerning the wreck to the same officer. These statements

and that of the defendant McDonald were introduced in evidence.

The written statement of the plaintiff was that he and his wife had visited their daughters in Washington and were returning from that city on Monday morning, that they stopped at Augusta, got his mother, and were taking her to their home in Romney where she was to spend the night and to be taken by the plaintiff to her home the next day; that "I came up by the Shanks Post Office and I was doing about 45 m. p. h. I saw an image of a green car cutting in front of me about 10 yards away. I cut my car to the right all I could and it seemed that he cut right with me. It happened that he was going a little faster than me. It happened so fast, that is all I can be sure of."

The defendant Mosorjak made this written statement: "My wife and I had been at *Carroll*, W. Va., visiting my mother and Father-in-law for the Holiday. We left there about 7:00 Monday morning enroute to our home in Baltimore. We stopped at Mt. Storm and had something to eat and stopped at another place for gasoline. To the best of my estimation I was going about 45 m. p. h. Just as I approached the road coming out of the Picnic area a car pulled out in front of me just as I got to him. I slammed on the brakes and started to skid and I don't know whether I skidded or glanced off the other car into the left lane of traffic."

The pertinent parts of the written statement of the defendant McDonald dated April 6, 1956, were: "I was on my way from Clarksburg, W. Va., and on my way home to Winchester, Virginia. It started to rain when we were on top of Allegheny Mountains and continued until we got into Romney, W. Va. We stopped at Romney and my wife and I ate at a restaurant, after lunch my wife and I continued on our way. When we got to the foot of the Mountain we pulled into a side road into the picnic area for the purpose of cleaning our windshield and glass in order that we might have clear vision before entering the

highway again. I was driving a 1946 Ford tudor sedan and we came to the road, I shifted to low gear, came out as close to the right hand side of the road as I possibly could. My wife and I both looked both ways and did not see anything coming and I pulled out on the highway leading East well on my side of the road. In my opinion I was 50 feet or more down the highway when I heard the crash. My wife said 'There has been a wreck.' I drove to the Service station and ran into the store and told them there had been a wreck right around the turn. And they rushed right apast me and were able to get to the scene of the accident before I was. When I got there a crowd had gathered and the lady in a nearby house called the ambulance. I waited there until I seen that everything was done that could be done until the ambulance arrived. I did not stay until the ambulance arrived. * * *. I went back to my car and proceeded on my way to Winchester, Virginia. With no feeling at all that I was the cause of this wreck. And I knew nothing of the authorities looking for my car until I read it in the Hampshire Review this date and I voluntarily returned to Romney, W. Va. to report to the officers of Hampshire County."

The plaintiff contends that both defendants were guilty of negligence and that their concurrent negligence was the proximate cause of the collision which resulted in the death of Cora Alice Lewis. Each defendant contends that he was not guilty of negligence and that the negligence of the other defendant was the proximate cause of her death. There is no contention by either defendant that the plaintiff or his intestate was guilty of contributory negligence.

Though each defendant assigns numerous errors, it is necessary, in the decision of this case, to consider only those assignments of error which relate to the sufficiency of the evidence to sustain the verdict, to the testimony of the plaintiff concerning the speed of the automobile of the defendant, and to the action of the trial court in giving certain instructions offered by the plaintiff and in giving

and refusing certain instructions offered by each of the defendants.

The plaintiff testified that when he passed Shanks Post Office traveling west on the highway he was operating his automobile in which his wife and mother were riding at a speed of forty five miles per hour; that his automobile was on his right side of the road and did not at any time cross the white center line of the highway; that when he approached the east exit of the picnic ground he noticed an old dark Ford automobile slowly moving out from the picnic ground a few feet from the exit; that "We were all getting closer and even at that time there was no need to be alarmed at anything"; that when the old automobile moved on to the highway another automobile cut over and by the old automobile and across the road at an angle of about forty five degrees; that the plaintiff then was only a few feet away and he saw that he "was trapped"; that he gripped the steering wheel as hard as he could, and pulled toward the berm on his right; that the right hand side of the other automobile "hit me on my right hand side, spun me around clockwise and headed me back East"; that when he first saw the automobile approaching from the west it was approximately thirty or thirty five feet west of the exit on its right side of the highway; that when the front part of the old automobile moved out on the highway the other automobile "whipped around" it and "cut across over on the West lane and angled across the road in front of me,"; that the automobile which came from the exit had approached the highway when the other automobile "cut around it"; that the speed of the other automobile was approximately sixty miles per hour, "Give a mile or take a mile is about the best I could do."; that after his automobile had stopped it was partly on the highway and partly on the berm and the other automobile was further over on the berm; that when he last saw the old automobile it had entered the highway, had not stopped, and continued to move on the highway, but the plaintiff "lost it" and did not know how far it continued to go. When cross-examined about the

speed of the automobile that struck his automobile and asked if he knew that it was "going anywhere close to 60 miles an hour" the plaintiff replied: "I can't say I know that figure. I approximated it at that.", and: "No, I don't know that." When asked this question: "If Mr. McDonald had stayed back there, there would not have been an accident, Mr. Mosorjak would have gone on by?", he gave this answer: "I would presume that is right."

The wife of the plaintiff, being in poor health, on advice of a physician, did not attend the trial and did not testify in the case.

The defendant Mosorjak testified that while driving his automobile east on U. S. Highway 50, at a speed of forty to forty five miles per hour and when he was about 300 feet west of the exit at the east end of the side road he first saw an automobile at the exit which was stopped but which "seemed like it was coming out on a side road."; that as he proceeded on the highway he was following traffic the character of which and its distance in front of him he could not recall; that when he came to a point on the highway "almost exactly opposite" the other automobile it "started to pull out from the side road onto the highway."; that at that time he was "almost on top" of the other automobile; that he immediately "slammed on my brakes."; that his automobile at the time was traveling at a speed of forty to forty five miles per hour; that it skidded "straight ahead-down the highway." and suddenly swerved to the left; that after that he did not remember anything except that he got out of his automobile, walked around it, and heard his wife "mumbling"; that he was injured in the collision and there was a pain in his chest; that he got a back rest from a seat in his automobile and lay down on it and asked some people to help his wife; that his automobile was equipped with new tires and was in good running condition but was a total wreck after the collision; that his wife, who was riding with him, was also injured and she and he were taken to a hospital in Cumberland for treatment; that just before the collision

he saw approaching traffic but he could not say that it was the automobile of the plaintiff or the kind of vehicle with which his automobile had collided; that he did not know Lewis or McDonald before the collision and was not acquainted with the territory surrounding the scene of the wreck; that it had been raining before the collision; and that the highway was "substantially dry" but there were some wet spots on it.

On cross-examination the defendant Mosorjak stated that after he saw the automobile at the exit when he was about 300 feet west of it he was watching the road in front of him and glanced at the other automobile a few times but did not continue to watch it as he went toward it; that the next time he saw it after he first saw it when he was 300 feet west of the exit he was "almost on top" of it; that it was moving when it reached the highway; that when he was 300 feet west of the exit he was following another vehicle which was about 200 feet in front of him; that when he was "almost on top" of the automobile at the exit his automobile skidded and swerved to the left but that he did not steer it to the left; that he did not know how far from him the oncoming automobile traveling west on its side of the highway was when he first saw it but that it was on its proper side of the road; that when the automobile entered the highway from the exit its left front wheel was on the highway and that it was moving when it reached the highway; that when he was 300 feet west of the exit and saw the automobile at the exit there was nothing to interfere with his vision or to prevent him from seeing that automobile; and that when his automobile skidded and swerved to the left he thought that he had "glanced off" the automobile that had pulled out in front of him.

The wife of the defendant Mosorjak testified that she was sitting "sort of sideways" in the front seat of the automobile; that she could not recall whether it was raining at the time of the accident; that when the automobile approached the scene of the accident she saw "a

car right out in front" and "grabbed hold of the back of the seat to brace myself."; that she did not know how fast her husband had been driving his automobile before the collision; and that she "was knocked unconscious" and did not remember anything until she awoke at the hospital.

The defendant McDonald testified that in returning from Clarksburg to his home in Winchester accompanied by his wife, he was driving his automobile east on U. S. Highway 50; that he drove his automobile into the side road at the west entrance, proceeded slightly beyond the center of the park where he stopped and cleaned the windshield and side glasses of his automobile; that he then drove to the exit at the east end and stopped eight or ten feet from the main highway; that his automobile was a 1946 model Ford which had low, second and high gear shifts; that when he stopped his automobile the stop sign on his right was almost opposite the center of the automobile; that he and his wife looked up and down the highway, and did not see any traffic approaching on the highway in either direction; that he then came upon the highway; that when he entered the highway his automobile was in low gear; that he shifted to second gear and then to high gear and proceeded east on the highway; that when he came into the highway he turned his automobile to the right and its right wheels were on the berm; that it had been raining before the collision; that when he heard the crash his automobile was on the highway at a point almost opposite the road that leads to the Hannas house; that "about the time the accident happened" another automobile going west on the highway, which he later learned was the Lewis automobile, passed his automobile; that when his automobile was stopped at the exit his view of the west entrance to the side road was unobstructed; that after he heard the crash he continued east on the highway until he came to the filling station on the opposite side of the road where he stopped; that he told two men there that there had been a wreck "around the turn"; that after reporting the accident his wife remained in the automobile and he

walked back to the scene of the wreck; that he remained there for a few minutes and, believing that he was not involved in it, returned to his automobile and continued on his way to his home in Winchester; that on April 6, four days after the wreck, he learned that he was wanted in connection with the wreck; that he immediately went to Romney, consulted an attorney, went with him to police headquarters, and made a voluntary statement to a police officer; that when the collision occurred he was driving east on the highway at a speed of twelve to fifteen miles per hour; and that he could not recall seeing any traffic on the highway other than the Lewis automobile. On cross-examination he stated that when he entered the highway from the exit he could see east of the exit a distance of approximately 200 feet and from the stop sign he could see as far as a point east of the exit where the road turned toward the store and filling station, but he could not definitely fix the distance.

The wife of the defendant McDonald, who was riding with him in the automobile, testified to substantially the same facts as those testified to by her husband.

Mrs. Helen Hannas, a witness produced in behalf of the plaintiff, who resided in a house approximately 269 feet east of the eastern edge of the exit from the side road, testified that she was standing inside the front door of her home before the collision occurred; that she heard the sound of the wreck; that within a matter of seconds before she heard the wreck she heard a motor van traveling on the highway toward Winchester; that when she heard the crash she looked and saw three cars; that she made telephone calls for two ambulances and the state police; that she then went to the scene of the wreck; and that at that time the sun was shining but there had been a hard rain a few minutes before the wreck. On cross-examination she stated that there were two cars at the scene of the wreck; that she saw a third automobile traveling east on the highway; that when she saw that automobile it was east of a "Pots and Pans" sign near the highway; and that

she could not fix the distance of that sign from the exit of the side road. The distance of that sign east of the exit of the side road, however, was fixed by other testimony at 165 feet east of the center of the exit.

Though the first count of the declaration alleges separate negligent acts and omissions upon the part of the defendant Mosorjak and separate negligent acts and omissions upon the part of the defendant McDonald, it also charges that their negligent acts and omissions were concurrent and proximately caused the collision between the automobile of the defendant Mosorjak and the automobile of the plaintiff which resulted in the death of Cora Alice Lewis, and the evidence is sufficient to show that the negligent acts and omissions of the defendants operating together constituted one single and complete transaction and were the direct and efficient cause of the collision.

If the defendant McDonald entered the highway at the exit from the side road before the automobile driven by the defendant Mosorjak came within the range of his vision, and if the automobile of the defendant McDonald had proceeded for a distance of fifty feet east of the exit, as he testified, or had proceeded to the "Pots and Pans" sign 165 feet east of the center of the exit when the collision occurred, his action in entering and traveling east on the highway would not have proximately caused or contributed to the collision. The jury, however, believed and by its verdict found, that he drove his automobile upon the highway in front of the approaching automobile close enough to it to cause the defendant Mosorjak, in an effort to avoid striking it, to apply his brakes suddenly which caused it to veer to its left and continue across the center line of the highway and strike the automobile of the plaintiff which at the time was on its right side of the highway with its right wheels on the berm or its left wheels approximately five and one half feet north of the center line of the highway and that by driving upon the highway in close proximity to the approaching automobile of the defendant Mosorjak, the defendant Mc-

Donald proximately caused or contributed to the collision. If the automobile of the defendant Mosorjak was at or near the entrance to the side road or 300 feet west of the exit when the defendant McDonald entered the highway in front of it and did not see it, although his view to the west was clear and unobstructed, he was guilty of negligence, for if he had looked effectively he should have seen the approaching automobile of the defendant Mosorjak.

When the defendant Mosorjak saw the automobile of the defendant McDonald at the exit from the side road which, as he testified, "seemed like it was coming out on a side road", he should have anticipated that it would probably enter the highway in front of him and he should have continued to watch it in order to avoid a collision with it. This he admits he did not do but instead he watched the traffic ahead of him on the highway and merely gave the automobile at the exit a few glances and he did not observe it closely until he was "almost on top" of it. Having failed to keep a sufficient lookout to determine the actual or reasonably expected movement of the automobile of the defendant McDonald, the defendant Mosorjak, when he realized that it was necessary for him to apply the brakes suddenly, lost control of the automobile and, though he did not strike the automobile of the defendant McDonald, he was unable to avoid a collision with the automobile of the plaintiff. As only the left front wheel of the automobile of the defendant McDonald was on the right lane of the highway and its right wheels were on the berm when Mosorjak applied the brakes, and as the left wheels of the automobile of the plaintiff were five and one-half feet north of the center line of the highway or its right wheels were on the northern berm, and as the entire width of the improved portion of the highway was twenty three feet four inches or twenty four feet, the space between the automobile of the defendant McDonald and the automobile of the plaintiff through which the defendant Mosorjak could have driven his automobile without striking either was at least twelve

or thirteen feet and by the proper operation of his automobile he could have missed contact with the other two automobiles and could have safely passed between them if he had not lost control of his automobile while traveling at a speed of forty or forty five miles per hour. If the defendant Mosorjak had reduced the speed of his automobile when, at a distance of 300 feet west of the exit, he first saw the automobile of the defendant McDonald and should have anticipated that it would enter the highway ahead of him, and had exercised reasonable care, he could have avoided the sudden application of the brakes and the resultant loss of control of his automobile on the wet highway. His failure to keep a proper lookout, to reduce safely and gradually the speed of his automobile, and to control its action to prevent it from crossing the center line and striking the automobile of the plaintiff which was traveling on its right side of the highway, constituted negligence which together with the negligence of the defendant McDonald proximately caused or contributed to the collision.

Where two or more persons are guilty of negligent acts or omissions, which in point of time and place concur, and together proximately cause or contribute to the injury of another, they are guilty of concurrent negligence for which, in an action by an injured party or, in case of his death, by his personal representative, recovery against them may be had. Point 2, syllabus, *Sigmon* v. *Mundy,* 125 W. Va. 591, 25 S. E. 2d 636; point 2, syllabus, *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164. Whether the negligence of two or more persons is concurrent, and taken together proximately causes or contributes to the injury of another person is, as to all matters of fact, a question for jury determination and a verdict of a jury based upon facts will not be disturbed if it is supported by substantial evidence. *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Sigmon* v. *Mundy,* 125 W. Va. 591, 25 S. E. 2d 636. Separate and distinct negligent acts or omissions by two or more persons constitute the proximate cause of an injury when they continue in unbroken sequence until the in-

jury occurs and directly and immediately contribute to and are the efficient cause of the injury. *Wilson* v. *Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *Brewer* v. *Appalachian Constructors*, 135 W. Va. 739, 65 S. E. 2d 87. See also *Tawney* v. *Kirkheart*, 130 W. Va. 550, 44 S. E. 2d 634.

By its verdict the jury found that the defendants Mosorjak and McDonald were guilty of negligence, that such negligence was concurrent, and that such concurrent negligence was the proximate cause of the injuries which resulted in the death of plaintiff's intestate. That finding of the jury is amply supported by the evidence and it will not be disturbed by this Court.

This Court has held in many cases that the questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them. *Davis* v. *Sargent*, 138 W. Va. 861, 78 S. E. 2d 217; *Wilson* v. *Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376; *Daugherty* v. *Baltimore and Ohio Railroad Company*, 135 W. Va. 688, 64 S. E. 2d 231; *Isgan* v. *Jenkins*, 134 W. Va. 400, 59 S. E. 2d 689; *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *Gilkerson* v. *Baltimore and Ohio Railroad Company*, 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *Taylor* v. *City of Huntington*, 126 W. Va. 732, 30 S. E. 2d 14; *Nichols* v. *Raleigh-Wyoming Mining Company*, 116 W. Va. 163, 179 S. E. 70; *Cavendish* v. *Chesapeake and Ohio Railway Company*, 95 W. Va. 490, 121 S. E. 498; *Chambers* v. *Princeton Power Company*, 93 W. Va. 598, 117 S. E. 480, 29 A. L. R. 1041; *Lindsey* v. *Bluefield Produce Company*, 91 W. Va. 118, 112 S. E. 310; *Walters* v. *Appalachian Electric Power Company*, 75 W. Va. 676, 84 S. E. 617; *Ewing* v. *Lanark Fuel Company*, 65 W. Va. 726, 65 S. E. 200, 29 L. R. A., N. S., 487; *Foley* v. *City of Huntington*, 51 W. Va. 396, 41 S. E. 113; *Raines* v. *Chesapeake and Ohio Railway Company*, 39 W. Va. 50, 19 S. E. 565, 24 L. R. A. 226; *Hanley* v. *City of Huntington*, 37 W. Va. 578, 16 S. E. 807. In *Yuncke*

v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410, this Court said in point 1 of the syllabus: "In an action to recover damages for personal injuries caused by the alleged negligence of the defendant, it is the peculiar province of the jury to determine the questions of negligence and contributory negligence, when the evidence is conflicting, or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses regarding them is conflicting; and the finding of the jury on such facts will not be disturbed by this Court. *Davis* v. *Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Gilkerson* v. *Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorn* v. *Addison Bros. and Smith,* 119 W. Va. 479, 194 S. E. 771. When a case involving conflicting testimony and circumstances upon the questions of negligence and contributory negligence has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it. *Davis* v. *Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Dangerfield* v. *Akers,* 127 W. Va. 409, 33 S. E. 2d 140; *Webb* v. *Brown and Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d 898; *Ware* v. *Hays,* 119 W. Va. 585, 195 S. E. 265. The principle just stated applies to and controls the decision in the present case upon the question of the sufficiency of the evidence to support the verdict of the jury.

The contention of the defendants that the testimony of the plaintiff to the effect that the speed of the automobile of the defendant Mosorjak at and immediately before the collision was approximately sixty miles per hour was inadmissible and that the admission of such evidence constituted reversible error, is without merit. Though the plaintiff saw the approaching automobile of the defendant

Mosorjak for a distance of only thirty to thirty five feet, it is clear that he observed it closely and for a sufficient, though short, period of time to enable him to recognize its green color and to realize that its course and the rapidity of its approach had trapped the plaintiff. The force with which it struck the automobile of the plaintiff and the position of both automobiles when they came to rest after the impact indicate clearly that the defendant Mosorjak was operating his automobile at an excessive rate of speed in the circumstances then present and that the plaintiff observed it sufficiently to enable him to estimate its speed in miles per hour. A witness is not required to be qualified in the highest degree or in any particular degree to render his opinion admissible; and the opinion of a witness is admissible in evidence if he has some peculiar qualification and has more knowledge of the subject than jurors are ordinarily supposed to possess. It is clearly established that the plaintiff saw the oncoming automobile of the defendant Mosorjak which he accurately described, and that, as an eyewitness of its direction and the rapidity of its approach, he possessed more knowledge of those facts than did the jurors. Generally if a witness has some qualifications with relation to the matter about which he undertakes to testify he should be permitted to give his opinion. *Toppins* v. *Oshel*, 141 W. Va. 152, 89 S. E. 2d 359; *Tennessee Gas Transmission Company* v. *Fox*, 134 W. Va. 106, 58 S. E. 2d 584; *Buckhannon and Northern Railroad Company* v. *Great Scott Coal and Coke Company*, 75 W. Va. 423, 83 S. E. 1031; *Cincinnati Gas Transportation Company* v. *Wilson*, 70 W. Va. 157, 73 S. E. 306; *Kay* v. *Glade Creek and Raleigh Railroad Company*, 47 W. Va. 467, 35 S. E. 973. Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused. *Toppins* v. *Oshel*, 141 W. Va. 152, 89 S. E. 2d 359; *Tennessee Gas Transmission Company* v. *Fox*, 134 W. Va. 106, 58 S. E. 2d 584; *Byrd* v. *Virginian Railroad Company*, 123 W. Va. 47, 13 S.

E. 2d 273; *State* v. *Brady,* 104 W. Va. 523, 140 S. E. 546; *Lutz* v. *Allegheny County,* 327 Pa. 587, 195 A. 1; *Brown* v. *Borough of Castle Shannon,* 318 Pa. 363, 178 A. 678; 32 C. J. S., Evidence, Paragraph 458b. A witness who is acquainted with a particular subject may express his opinion concerning it and, though not an expert and not regarded as such, his evidence is competent and its weight and credibility are for the jury. *Toppins* v. *Oshel,* 141 W. Va. 152, 89 S. E. 2d 359; *Tennessee Gas Transmission Company* v. *Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *Virginian Power Company* v. *Brotherton,* 90 W. Va. 155, 110 S. E. 546. It does not appear that in admitting this evidence the trial court abused its discretion. The evidence was therefore admissible and it was the province of the jury to determine its weight and its credibility. Even if the testimony of the plaintiff as to the speed of the automobile could be considered as improbable there was sufficient evidence of other acts of negligence of the defendant Mosorjak which supports the verdict of the jury. In *Adkins* v. *Smith,* 142 W. Va. 772, 98 S. E. 2d 712, this Court held in point 1 of the syllabus that "In an action of trespass on the case arising out of a collision between two automobiles, the admission of improbable testimony as to the speed of one of the automobiles involved is not reversible error, where there is sufficient evidence of other acts of negligence to sustain the verdict of the jury."

Examination and careful consideration of the instructions offered by the various parties do not disclose reversible error in the action of the trial court in giving certain instructions offered by the plaintiff and in giving and refusing certain instructions offered by each of the defendants, and the judgment will not be disturbed on the ground that the trial court committed prejudicial error in giving or in refusing any of the instructions submitted by any of the parties to this action.

The judgment of the Circuit Court of Hampshire County is affirmed.

*Affirmed.*